UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SONIA WAGNER,                     :

            Plaintiff,            :
                                         08 Civ. 11284 (GBD)(HBP)
     -against-                    :
                                         REPORT AND
METROPOLITAN LIFE INSURANCE       :      RECOMMENDATION
COMPANY, UNITED AIR LINES, INC.,
and EDWARD WAGNER                 :

            Defendants.           :

----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,

I.   Introduction

          This action arises out of a dispute between plaintiff

Sonia Wagner and defendants Metropolitan Life Insurance Company

("MetLife"), United Air Lines, Inc. ("United") and Edward Wagner

regarding the disbursement of life insurance benefits from an

employee welfare benefits plan governed by the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29

U.S.C. §§ 1001 et seq.  Plaintiff and defendants MetLife and

United cross-move for summary judgment on the issues of whether

MetLife's determination to disburse life insurance benefits to

Edward Wagner and former defendant Elizabeth Wagner, and not to
plaintiff, was arbitrary and capricious and whether MetLife and
United breached their fiduciary duties.  MetLife and United also
move to strike plaintiff's affidavit and the documents annexed
thereto in support of her motion for summary judgment, as well as
all corresponding statements in her Rule 56.1 statement.

　　　　　For the reasons set forth below, I respectfully
recommend that:  (1) MetLife and United's motion for summary
judgment (Docket Item 42) be granted; (2) plaintiff's cross-
motion for summary judgment (Docket Items 36, 47) be denied, and
(3) MetLife and United's motion to strike (Docket Items 52) be
denied as moot.

II.  <u>Facts</u>

　　　A.  <u>Background</u>

　　　　　This dispute arises from an ERISA Plan sponsored by
United that provided life insurance for United's employees.
Edward D. Wagner, who is now deceased, is a former United
employee who had a life insurance policy issued by MetLife
pursuant to the plan.  Plaintiff claims to be the wife of Edward
D. Wagner and, thus, the rightful beneficiary of Edward D.
Wagner's Plan.  No beneficiary was named in Edward D. Wagner's

policy.  Defendant Edward Wagner and Elizabeth Wagner are the son and daughter of Edward D. Wagner.  Edward Wagner and Elizabeth Wagner filed claims under the Plan following Edward D. Wagner's death and received a total of $86,094.26 in benefits from MetLife.

    1.  <u>The ERISA Plan</u>

From December 1969 until his death on December 5, 2005, Edward D. Wagner was employed by United (Defendants' Rule 56.1 Statement of Material Facts ("Defs.' 56.1") ¶¶ 1, 10).  By virtue of his employment, Edward D. Wagner was enrolled in the United Airlines Employee Welfare Benefit Plan (Defs.' 56.1 ¶ 2).  MetLife issued the life insurance polices and administered claims for benefits under the Plan (Defs.' 56.1 ¶ 3, 9).  The Plan is an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1) (Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1") ¶ 7).  The Plan is governed by ERISA (Pl.'s 56.1 ¶ 8; Summary Plan Description, annexed as Ex. B to Declaration of Andrea Espinosa, dated July 9, 2010 (Docket Item 45) ("Espinosa Decl."), at WAGNER 000094[1]).

---

[1]"WAGNER 000___" refers to the Bates Stamp number on the lower right hand corner of pertinent documents, many of which are otherwise unnumbered.

3

The Plan provided that if a participant died while covered for Life Benefits, a beneficiary would be paid the amount accrued at the time of death (Defs.' 56.1 ¶ 4, <u>quoting</u> "Your Employee Benefit Plan, United Air Lines, Inc.," annexed as Ex. A-1 to Declaration of Andrea Espinosa, dated July 9, 2010 ("Espinosa Decl.") (Docket Item 45), at WAGNER 000027).  Edward D. Wagner was covered at the time of his death and had accrued $40,000 in Optional Life Benefits and $46,000 in Basic Life Benefits (Life Insurance Claim Form Employer's Statement, annexed as Ex. C-3 to Espinosa Decl., at WAGNER 000247).  The Plan defined "Beneficiary" as "the person or persons you choose to receive any benefit payable because of your death" (Defs.' 56.1 ¶ 5 (citation omitted)).  Under the Plan, participants were required to make their beneficiary choice in writing on an approved form, which "must be filed" with the Plan's records (Defs.' 56.1 ¶ 5 (citation omitted)).

If a Plan participant died without naming a beneficiary, the Plan provided that the benefits payable

> will be divided and paid in equal shares to each member of the first class in the order listed below in which there is a person who is related to you and who survives you:
>
> 1.  your Spouse;      3.  your parent(s);
> 2.  your child(ren);  4.  your sibling(s);

> However, we may instead pay all or part of that amount
> to your estate.  Any payment will discharge our
> liability for the amount so paid.

("Your Employee Benefit Plan, United Air Lines, Inc.," annexed as

Ex. A-1 to Espinosa Decl., at WAGNER 000038-39, 000080).[2]

According to the Plan's Summary Plan Description, the

Plan Administrator delegated the authority to determine insured

benefits to the insurance company (SPD, dated December 2005,

annexed as Ex. B to Espinosa Decl., at G-4-G-5).  MetLife was

given "the sole authority to determine who is eligible for the

Plan, what benefits they are entitled to under the terms of the

Plan, what the terms of the Plan mean, and any other claims under

the plan" (SPD, annexed as Ex. B to Espinosa Decl., at G-4).

2.  Instructions
for Filing a Claim

According to the Summary Plan Description, "[a] claim

for loss of life must be filed by contacting the United Benefit

Service Center (UBSC) at 1-888-825-0188.  The UBSC will provide

MetLife with the necessary information to initiate the claim

process" (SPD, annexed as Ex. B to Espinosa Decl., at L-7).  The

---

[2]The Plan's Summary Plan Description described this
procedure in nearly identical terms, with differences not
pertinent to these motions (see Summary Plan Description ("SPD"),
dated January 2003, annexed as Ex. B to Espinosa Decl., at L-4).

Plan provided that claimants for Life Benefits complete a form
and submit an original certified death certificate that included
the cause of death (Defs.' 56.1 ¶ 8 (citation omitted)).  The
Plan's claim information further provided that all Optional Life
Benefits claim forms could be obtained from MetLife and that all
Basic Life Benefits could be obtained from United (Ex. A-2 to
Espinosa Decl., at WAGNER 000042, 000085).

      MetLife's Life Insurance Claim Form included an
Employer's Statement (Ex. C-2 to Espinosa Decl., at WAGNER
000221-222).  On an attached instruction form, MetLife directed
the employer to detach the instructions, complete the Employer's
Statement and give the claimant the remaining pages to complete
the Claimant's Statement (Ex. C-2 to Espinosa Decl., at WAGNER
000220).[3]  The employer was to submit the Employer's Statement to
MetLife with "all other pertinent claim information (such as
enrollment forms and beneficiary designations)" (Ex. C-2 to
Espinosa Decl., at WAGNER 000220).

---

[3]MetLife and United dispute that the instruction form was
applicable to United Life Benefit claims, noting that plaintiff
submitted the form in her correspondence.

3.  Disbursement of
    Decedent's Benefits

On December 5, 2005, Edward D. Wagner died in Brazil of natural causes (Report of Death of an American Citizen Abroad, dated Dec. 9, 2005, annexed as Ex. C-4 to Espinosa Decl., at WAGNER 000263).  Edward D. Wagner had never submitted a beneficiary designation form to MetLife (Pl.'s Response to Defs.' 56.1 ¶ 11).

On December 12, 2005, Elizabeth Wagner, Edward D. Wagner's daughter, advised United of her father's death by telephone (Non-Retiree Death Notification Form, annexed as Ex. C-4 to Espinosa Decl., at WAGNER 000258).  She spoke with Laurie Fahrenkrog, who filled out a Non-Retiree Death Notification Form and sent it to MetLife (Defs.' 56.1 ¶ 14, citing Ex. C-4 to Espinosa Decl., at WAGNER 000258).  One of Fahrenkrog's contact numbers on the form was the United Benefit Service Center number listed in the Plan's Summary Plan Description (Ex. C-4 to Espinosa Decl., at WAGNER 000258; SPD, annexed as Ex. B to Espinosa Decl., at L-7).  The completed form contained a handwritten statement across the top noting "no bene[ficiary] on file" (Non-Retiree Death Notification Form, annexed as Ex. C-4 to Espinosa Decl., at WAGNER 000258).

By letter dated December 22, 2005, MetLife Customer Service Representative Donna L. Wheat mailed Edward Wagner, Edward D. Wagner's son, a "beneficiary death packet" containing an Affidavit for Claim Consideration Form, Claimant's Statement/TCA Form and a return envelope (Pl.'s Response to Defs.' 56.1 ¶ 16).[4]  This packet was sent to the same address in Orland Park, Illinois, that Elizabeth Wagner had provided United (Letter to Edward Wagner, Ex. C-4 to Espinosa Decl., at WAGNER 000251; Non-Retiree Death Notification Form, annexed as Ex. C-4 to Espinosa Decl., at WAGNER 000258).

On December 29, 2005, MetLife received a completed Employer's Statement calculating Edward D. Wagner's Life Benefits (Pl.'s Response to Defs.' 56.1 ¶ 18, <u>citing</u> Ex. C-3 to Espinosa Decl., at WAGNER 000247-248).  The form directed the employer to "attach any enrollment forms and beneficiary designations [it] retained" (Ex. C-3 to Espinosa Decl., at WAGNER 000247).  The Employer's Statement did not have an area to identify beneficiaries, and United sent no attachments (Defs.' 56.1 ¶ 20; Pl.'s Response to Defs.' 56.1 ¶ 20).  Donna Wheat signed the form

---

[4]MetLife and United dispute that Wheat is a MetLife Customer Representative and note that the letter in question contained "United Airlines" on the right side of the letterhead.

where an employer's authorized representative's signature was required (Ex. C-3 to Espinosa Decl., at WAGNER 000247).

On January 9, 2006, MetLife received:  (1) Claimant's Statements from both Edward Wagner and Elizabeth Wagner certifying that their father was "divorced" (Ex. C-3 to Espinosa Decl., at WAGNER 000243-246); (2) a Claimant's Affidavit from Edward Wagner indicating that his father was divorced from Susan Wagner on November 27, 2002, and making no mention of plaintiff (Ex. C-4 to Espinosa Decl., at WAGNER 000260-262), and (3) a certified copy of the Report of Death of an American Citizen Abroad listing the cause of death (Defs.' 56.1 ¶ 28).  This certificate stated that Edward D. Wagner's body had been shipped to Orland Park, Illinois (Report of Death of an American Citizen Abroad, attached as Ex. C-4 to Espinosa Decl., at WAGNER 000263). On January 13, 2006, MetLife approved the claims of Edward Wagner and Elizabeth Wagner and paid all Plan life benefits to them in equal shares of $43,047.13, which included interest (Defs.' 56.1 ¶ 34-35; Pl.'s Response to Defs.' 56.1 ¶ 34-35; Ex. C-4 to Espinosa Decl. at WAGNER 000265).

4.   Plaintiff's
     Request for Benefits

On April 30, 2007, United received plaintiff's letter
inquiring about a death benefit for Edward D. Wagner, whom she
called her husband (Defs.' 56.1 ¶ 36).  She enclosed a marriage
certificate from the Philippines Office of the Registrar General
indicating that she and Edward D. Wagner had been married on
February 4, 2002 (Defs.' 56.1 ¶ 37, citing Ex. C-4 to Espinosa
Decl., at WAGNER 000271).  MetLife received the letter and
enclosures on May 7, 2007 (Pl.'s Response to Defs.' 56.1 ¶ 38).

On May 18, 2007, MetLife employee Cheri Ciacciarelli-
Natale reviewed the letter and the file and recommended that
plaintiff be sent a letter explaining that the benefits had
already been paid in good faith to Edward D. Wagner's children
(Defs.' 56.1 ¶ 39, citing Activity to Client Contact File, Ex. C-
1, annexed to Espinosa Decl., at WAGNER 000157; and Referral, Ex.
C-4, annexed to Espinosa Decl., at WAGNER 000268).[5]  MetLife
supervisor Tim Copperwheat approved this recommendation (Pl.'s
Response to Defs.' 56.1 ¶ 40).  By letter dated June 6, 2007,
MetLife explained that there was no beneficiary on file and it
had paid the claim pursuant to the Claimant's Affidavit, which

_____

[5]Plaintiff disputes these facts.

made no mention that Edward D. Wagner was married at his death. "Therefore . . . our liability on this claim has been satisfied" (Ex. C-4 to Espinosa Decl., at WAGNER 000266-267).

On July 31, 2007, MetLife received another letter from plaintiff disputing the claim and contending that Elizabeth Wagner knew of, and attended, the marriage of Edward D. Wagner and plaintiff (Ex. C-4 to Espinosa Decl., at WAGNER 000276). Plaintiff enclosed an affidavit signed by Edward D. Wagner and dated January 31, 2002, declaring that there was "no legal impediment to [his] marriage" to plaintiff (Defs.' 56.1 ¶ 45; Ex. C-4 to Espinosa Decl., at WAGNER 000278). MetLife supervisor Copperwheat noticed that plaintiff's purported date of marriage to plaintiff preceded the date given by Edward Wagner for decedent's divorce from his first wife, and Copperwheat advised that another "paid in good faith" letter be drafted including this fact (Defs.' 56.1 ¶ 47, <u>citing</u> Activity to Client Contact File, Ex. C-1, annexed to Espinosa Decl., at WAGNER 000154; <u>and</u> Referral, Ex. C-4, annexed to Espinosa Decl., at WAGNER 000275).[6] MetLife sent out the second "paid in good faith" letter to plaintiff, dated September 20, 2007, but it made no mention of

---

[6]Plaintiff disputes these facts.

the conflicting dates (Ex. C-4 to Espinosa Decl., at WAGNER 000273-274).

On March 3, 2008, plaintiff requested a claim form from MetLife, but MetLife refused to provide one because the claim had been paid and the file was closed (Defs.' 56.1 ¶ 53). By letter dated June 4, 2008, plaintiff enclosed several documents supporting her benefits demand (Defs.' 56.1 ¶ 54). A 2002 Benefit Confirmation Form in Edward D. Wagner's name was enclosed, describing "Medical and Dental Elections" and naming Elizabeth Wagner and plaintiff as eligible dependents (Defs.' 56.1 ¶ 54, <u>citing</u> Ex. C-2 to Espinosa Decl., at WAGNER 000201). The dental plan election was entitled "Traditional Dental (MetLife)" (Ex. C-2 to Espinosa Decl., at WAGNER 000201). Plaintiff also enclosed a completed Claimant's Statement (Ex. C-2, annexed to Espinosa Decl., at WAGNER 000205-206).

MetLife employee Linda Desmarais reviewed plaintiff's submission, questioned whether plaintiff's marriage to decedent was legal and recommended sending a third "paid in good faith" letter (Defs.' 56.1 ¶ 54, <u>citing</u> Referral, attached as Ex. C-2, annexed to Espinosa Decl., at WAGNER 000215-216).[7] By letter dated August 4, 2008, MetLife advised plaintiff that the Plan was

---

[7]Plaintiff disputes these facts.

12

governed by ERISA and that MetLife was adhering to its denial of
plaintiff's claim because it had "re-examined the entire claim
file, including examination of any additional material and
information provided with your request for appeal," had found no
designated beneficiary and had paid the benefits to Edward D.
Wagner's children under the Plan's facility of payment provisions
(Ex. C-2 to Espinosa Decl., at WAGNER 000213).

By letter dated September 29, 2008, plaintiff made a
formal and final demand for payment (Ex. C-2 to Espinosa Decl.,
at WAGNER 000217-218).  She claimed that an examination of
records would have shown that she had been designated as Edward
D. Wagner's beneficiary in medical and dental plans administered
by MetLife from 2002 and that MetLife had failed to follow its
claim procedures (Ex. C-2 to Espinosa Decl., at WAGNER 000217).
On October 28, 2008, MetLife reviewed plaintiff's letter and
decided to "reach out to the children to verify the date of
divorce from Susan Wagner" (Referral, attached as Ex. C-2,
annexed to Espinosa Decl., at WAGNER 000224-225).  MetLife wrote
to Edward Wagner on November 14, 2008, stating that its records
showed the date of divorce between Edward D. Wagner and Susan
Wagner to be November 27, 2002, and requesting a "divorce decree
or other legal document[] that would support that this was the
date of their divorce" (Ex. C-3 to Espinosa Decl., at WAGNER

13

000226).  The letter was returned by the United States Postal
Service, and MetLife never received a response (Defs.' 56.1 ¶ 63,
citing Ex. C-3, annexed to Espinosa Decl., at WAGNER 000227-229).

    B.  Procedural History

        On October 31, 2008, plaintiff commenced this action in
New York State Supreme Court against MetLife (see Declaration of
Michael H. Bernstein, Esq., dated July 9, 2010 (Docket Item 46),
at ¶ 3); Ex. C-3 to Espinosa Decl., at WAGNER 000230-238).
MetLife removed the action to this Court on December 29, 2008,
based on federal question jurisdiction because all of plaintiff's
claims were preempted by ERISA (Notice of Removal, Docket Item
1).  On February 6, 2009, MetLife answered the Complaint (Docket
Item 6).  On April 28, 2008, plaintiff filed an Amended
Complaint, adding United, Edward Wagner and Elizabeth Wagner as
defendants (Docket Item 11).  The Amended Complaint asserted
claims against MetLife and United under ERISA for failure to
provide promised benefits to a rightful beneficiary and for
breach of fiduciary duties, as well as claims against Edward
Wagner and Elizabeth Wagner for fraud.  Plaintiff sought the full
face value of the life insurance policy plus interest, punitive
damages and attorney's fees.  On July 20, 2009, MetLife and
United answered the Amended Complaint and filed cross-claims for

14

indemnification against Edward Wagner and Elizabeth Wagner
(Docket Item 21).

On July 2, 2009, Elizabeth Wagner, proceeding pro se,
moved to dismiss for lack of personal jurisdiction.  By Order
dated January 25, 2010, your Honor granted the motion and
dismissed Elizabeth Wagner from the action.  On February 8, 2010,
MetLife and United filed a motion for reconsideration of the
January 25, 2010, Order, which your Honor denied on February 25,
2010.

On July 9, 2010, plaintiff and MetLife and United moved
for summary judgment.  On July 16, 2010, plaintiff filed an
affidavit with attachments in support of her motion (Docket Item
51), as well as a Rule 56.1 statement (Docket Item 49).  On July
30, 2010, MetLife and United moved to strike plaintiff's
affidavit, attachments and any corresponding statements in her
Rule 56.1 statement (Docket Item 52) on the ground that plaintiff
was introducing "evidence that was not before MetLife at the time
it made its benefit determination" (Memorandum of Law In Support
of Motion to Strike, dated July 30, 2010 (Docket Item 54), at 1).
Plaintiff argued that the disputed documents could be considered
under a de novo standard of review (Memo in Opposition to Motion
to Strike (Docket Item 64) at 1-2.

15

## III.  <u>Analysis</u>

### A.  <u>Summary Judgment Standard</u>

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  This form of relief is appropriate when, after discovery, the party . . . against whom summary judgment is sought has not shown that evidence of an essential element of her case -- one on which she has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact.  An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial."  <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993).  If the non-movant fails to meet this burden, summary judgment will be granted against it.

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Binder & Binder PC v. Barnhart, 481 F.3d 141, 148 (2d Cir. 2007); Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223-24 (2d Cir. 1994); see also McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002), quoting Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 255; accord Jeffreys v. City of New York, supra, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (citation and internal quotations omitted); see also Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  These same standards apply where, as here, there are cross-motions for summary judgment.  Fourth Toro Family Ltd.

P'ship v. PV Bakery, Inc., 88 F. Supp. 2d 188, 193 (S.D.N.Y. 2000) (Hellerstein, D.J.).  "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  10A Charles A. Wright, Arthur A. Miller, Mary K. Kane, Federal Practice & Procedure § 2720 at 335-36 (3d ed. 1998).

          "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248; accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

B.   Laches

MetLife and United move for summary judgment on the basis that plaintiff's claims under ERISA Sections 502(a)(1)(B) and 502(a)(3) are barred by laches.  Laches is an equitable defense frequently summarized by the maxim that "equity aids the vigilant, not those who sleep on their rights." Stone v. Williams, 873 F.2d 620, 623-24 (2d Cir. 1989) (citations omitted), opinion vacated on reh'g on other grounds, 891 F.2d 401, 404-05 (2d Cir. 1989).  Its applicability is based upon the circumstances specific to each case.  See Stone v. Williams, supra, 873 F.2d at 624.

Plaintiff seeks plan benefits under ERISA Section 502(a)(1)(B), which states that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132. The Second Circuit has held that such claims "are inherently equitable in nature, not contractual." DeFelice v. Am. Intern. Life Assur. Co. of N.Y., 112 F.3d 61, 64 (2d Cir. 1997), citing Sullivan v. LTV Aerospace & Def. Co., 82 F.3d 1251, 1257-59 (2d Cir. 1996).  But see Yoon v. Fordham Univ. Faculty & Admin. Ret.

19

Plan, 99 Civ. 11042 (RCC), 2004 WL 3019500 at *14 (S.D.N.Y. Dec. 29, 2004) (Casey, D.J.), aff'd, 173 F. App'x 936 (2d Cir. 2006) (holding that doctrine of laches did not apply because "[p]laintiff's claims for pension contributions are at law, not at equity.").

Plaintiff also seeks relief under ERISA Section 502(a)(3)(B), which states that a plan participant, beneficiary or fiduciary may bring a civil action "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan" (emphasis added).  The Second Circuit has held that if "an ERISA fiduciary deals unfairly with a plan's beneficiaries, a claim for breach of fiduciary duty may lie under ERISA § 502(a)(3)."  Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 630 (2d Cir. 2008), citing Frommert v. Conkright, 433 F.3d 254, 269-72 (2d Cir. 2006); and Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88-89 (2d Cir. 2001).

The elements of the defense of laches are (1) plaintiff's knowledge of defendant's conduct; (2) plaintiff's unreasonable delay in filing suit, and (3) prejudice to defendant.  See Eppendorf-Netheler-Hinz GmbH v. Enteron Co., 89 F. Supp. 2d 483, 485 (S.D.N.Y. 2000) (Motley, D.J.).  The burden of establishing a defense of laches generally falls on the

20

defendant.  See Eppendorf-Netheler-Hinz GmbH v. Enteron Co.,
supra, 89 F. Supp. 2d at 485.  However, the Second Circuit has
held that "[l]aches is not a defense to an action filed within
the applicable statute of limitations."  United States v. RePass,
688 F.2d 154, 158 (2d Cir. 1982), citing United States v. Mack,
295 U.S. 480, 489 (1935); see also United States v. Milstein, 401
F.3d 53, 63 (2d Cir. 2005) (the "well established . . . general
rule" is that laches is no defense within limitations period);
Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 260
(2d Cir. 1997) ("The prevailing rule, then, is that when a
plaintiff brings a federal statutory claim seeking legal relief,
laches cannot bar that claim, at least where the statute contains
an express limitations period within which the action is
timely."); ILGWU Nat'l Ret. Fund v. Smart Modes of Cal., Inc.,
735 F. Supp. 103, 106 (S.D.N.Y. 1990) (Patterson, D.J.) ("[I]t is
well-established that, where the applicable statute of
limitations has not yet expired, the defense of laches is
inapplicable.") (citations omitted)).  But see Ikelionwu v.
United States, 150 F.3d 233, 238 (2d Cir. 1998) ("[I]f the
applicable legal statute of limitations has not expired, there is
rarely an occasion to invoke the doctrine of laches . . . .");
Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir.
1996) ("When a suit is brought within the time fixed by the

analogous statute, the burden is on the defendant to show . . .
circumstances exist which require the application of the doctrine
of laches." (citation omitted)).  In <u>Harris Trust & Sav. Bank v.</u>
<u>John Hancock Mut. Life Ins. Co.</u>, 83 Civ. 5401 (DC), 1997 WL
278116 at *2 (S.D.N.Y. May 23, 1997), the Honorable Denny Chin,
then a United States District Judge, stated that it was "the law
of this Circuit that laches may not be asserted as a defense if
the applicable statute of limitations has not run" and added that
"I can see no reason not to apply this rule to claims under
ERISA." (citations omitted).

> Under ERISA Section 413,
>
> No action may be commenced under this subchapter
> with respect to a fiduciary's breach of any
> responsibility, duty, or obligation under this part, or
> with respect to a violation of this part, after the
> earlier of –
>
> (1) six years after (A) the date of the last action
> which constituted a part of the breach or violation, or
> (B) in the case of an omission the latest date on which
> the fiduciary could have cured the breach or violation,
> or
>
> (2) three years after the earliest date on which the
> plaintiff had actual knowledge of the breach or
> violation;
>
> except that in the case of fraud or concealment, such
> action may be commenced not later than six years after
> the date of discovery of such breach or violation.

29 U.S.C. § 1113.

        The Second Circuit has held that "ERISA § 413 applies
only to breach of fiduciary duty claims." <u>Campanella v. Mason
Tenders' Dist. Council Pension Plan</u>, 132 F. App'x 855, 856 (2d
Cir. 2005); <u>see also Carollo v. Cement & Concrete Workers Dist.
Council Pension Plan</u>, 964 F. Supp. 677, 687 (E.D.N.Y. 1997).  The
Second Circuit has also held that the six-year statute of
limitations period under New York Civil Practice Law and Rules
("C.P.L.R.") Section 213 applies to other claims brought under
ERISA Section 502, 29 U.S.C. § 1132.  <u>Campanella v. Mason
Tenders' Dist. Council Pension Plan</u>, 299 F. Supp. 2d 274, 280
(S.D.N.Y. 2004) (Marrero, D.J.), <u>citing Miles v. N.Y. State
Teamsters Conference Pension & Ret. Fund Emp. Pension Ben. Plan</u>,
698 F.2d 593, 598 (2d Cir. 1983).  Under N.Y.C.P.L.R. Section
213, the Second Circuit has held that a claim "under ERISA
accrues upon a clear repudiation by the plan that is known, or
should be known, to the plaintiff -- regardless of whether the
plaintiff has filed a formal application for benefits." <u>Carey v.
Int'l Broth. of Elec. Workers Local 363 Pension Plan</u>, 201 F.3d
44, 49 (2d Cir. 1999).

        Because plaintiff's claims under ERISA Section
502(a)(3) are breach of fiduciary duty claims, these are subject
to the ERISA Section 413 limitations period.  Her claims under
Section 502(a)(1)(B) are subject to the N.Y.C.P.L.R. six-year

                              23

period.  Plaintiff's claims are within these periods.  Under
these facts, plaintiff's breach of fiduciary duty claims would be
subject to the shorter limitations period of three years after
the earliest date on which she had actual knowledge of a breach
or violation.  MetLife notified plaintiff by letter dated June 6,
2007 that MetLife had already paid out benefits "to the 1st class
of lineal heirs listed on the Claimants Affidavit per the
plan[']s facility of payment provision" (Ex. C-4, annexed to
Espinosa Decl., at WAGNER 000266).  This was the initial means by
which plaintiff received actual knowledge that MetLife and United
had already processed a claim and paid benefits to someone else.
Plaintiff's action against MetLife, filed in state court on
October 31, 2008, was removed to this Court on December 29,
2008.[8]  Therefore, these claims are within the three-year period.

       Plaintiff's 502(a)(1)(B) claims fall within the longer
six-year period.  MetLife's letter dated June 6, 2007, was "a
clear repudiation by the plan" that was known, or should have
been known, to the plaintiff, even though the plaintiff had not
made a formal application for benefits.  Carey v. Int'l Broth. of

_____

       [8]At least one court within this Circuit has held that filing
an action in state court does not equitably toll ERISA's statute
of limitations.  Manginaro v. Welfare Fund of Local 771,
I.A.T.S.E., 21 F. Supp. 2d 284, 298-99 (S.D.N.Y. 1998) (Mukasey,
D.J.), citing Shofer v. Hack Co., 970 F.2d 1316, 1318-19 (4th
Cir. 1992)).

24

Elec. Workers Local 363 Pension Plan, supra, 201 F.3d at 49.

Thus, plaintiff's 502 (a)(1)(B) claims are also timely.

Although I find Judge Chin's holding in Harris Trust &
Sav. Bank v. John Hancock Mut. Life Ins. Co., supra, 1997 WL
278116 at *2, to be controlling here, I shall, nevertheless,
briefly address the merits of MetLife and United's laches
defense.

Plaintiff's delay in filing suit was not unreasonable.
MetLife received a letter from plaintiff on May 7, 2007 -- almost
16 months after MetLife paid benefits to Edward D. Wagner's
children -- when it was forwarded from United (see Defs.' 56.1 ¶
36-38).  MetLife and plaintiff began corresponding by letter for
the next 17 months before the suit was filed.  Plaintiff was
living in the Philippines and stated in a subsequent letter that
her "English is very poor" (Letter of July 8, 2007, annexed as
Ex. C-4 to Espinosa Decl., at WAGNER 000276).  As she received
correspondence, she responded with more information and
documentation, and MetLife did not expressly "uphold the denial
of this claim" until a letter was sent dated August 4, 2008 (Ex.
C-4, annexed to Espinosa Decl., at WAGNER 000213).  Less than
three months later, plaintiff filed suit.  Given the geographic
distance between the parties, the language barrier and
plaintiff's initial confusion regarding who to contact and how to

25

file a claim -- which is clear from the administrative record --
I conclude that this delay was not unreasonable.  Thus, I need
not reach the issue as to whether MetLife and United were
prejudiced.

Therefore, I conclude that plaintiff's claims are not
barred by laches, and I respectfully recommend that MetLife and
United's motion for summary judgment on this basis be denied.

C.   Review of Plan Disbursement
     Determination under ERISA

1.   Arbitrary and Capricious Standard

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,
115 (1989), the United States Supreme Court held that "a denial
of benefits challenged under [ERISA] is to be reviewed under a de
novo standard unless the benefit plan gives the administrator or
fiduciary discretionary authority to determine eligibility for
benefits or to construe the terms of the plan."  When a claim
administrator or fiduciary possesses such discretionary
authority, "[t]rust principles make a deferential standard of
review appropriate." Metro. Life Ins. Co. v. Glenn, 554 U.S.
105, 111 (2008), quoting Firestone Tire & Rubber Co. v. Bruch,
supra, 489 U.S. at 111 (citation and internal quotation marks
omitted) (emphasis added by Glenn).

Furthermore, the Second Circuit has held that in these cases, "we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'"  Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009), quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995); Richard v. Fleet Fin. Grp. Inc. Ltd. Emp. Benefits Plan, 367 F. App'x. 230, 232 (2d Cir. 2010); Tortora v. SBC Commc'ns, Inc., 09 Civ. 7895 (SAS), 2010 WL 3154566 at *5 (S.D.N.Y. July 30, 2010) (Scheindlin, D.J.).  Under the "arbitrary and capricious" standard, a court cannot "overturn a decision to deny or terminate benefits unless 'it was without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  Fuller v. J.P Morgan Chase & Co., 423 F.3d 104, 107 (2d Cir. 2005), quoting Pagan v. NYNEX Pension Plan, supra, 52 F.3d at 442 (citation and internal quotation marks omitted).  "Substantial evidence" is defined as "such evidence that a reasonable mind might accept as adequate to support the conclusion reached . . . . [It] requires more than a scintilla but less than a preponderance."  Wiener v. Health Net of Conn., Inc., 311 F. App'x 438, 440 (2d Cir. 2009), quoting Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal quotation marks omitted); see also Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 141 (2010); Giraldo v. Bldg. Serv. 32B-J Pension

Fund, 04 Civ. 3595 (GBD), 2009 WL 812044 at *4 (S.D.N.Y. Mar. 25, 2009) (Daniels, D.J.).

Where a plan administrator "is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." Firestone Tire & Rubber Co. v. Bruch, supra, 489 U.S. at 115 (citation and internal quotation marks omitted).  A conflict of interest exists where the administrator of an ERISA plan "both evaluates claims for benefits and pays benefits."  Metro. Life Ins. Co. v. Glenn, supra, 554 U.S. at 112.  The United States Supreme Court has declined to require a de novo review even where a conflict exists, recently holding that "[w]e do not believe that Firestone's statement implies a change in the standard of review, say, from deferential to de novo review."  Metro. Life Ins. Co. v. Glenn, supra, 554 U.S. at 115 (emphasis in original); see also Conkright v. Frommert, __ U.S. __, 130 S. Ct. 1640, 1647 (2010) ("a systemic conflict of interest does not strip a plan administrator of deference" (citation omitted)); Kelly v. Handy & Harman, 10 Civ. 0718, 2011 WL 159601 at *1 (2d Cir. Jan. 19, 2011); Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82-83 (2d Cir. 2009) ("plaintiff's showing that the administrator's conflict of interest affected the choice of a reasonable interpretation is only one of 'several different considerations'

28

that judges must take into account when 'review[ing] the lawfulness of benefit denials.'" (quoting McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008)); Tortora v. SBC Commc'ns, Inc., supra, 2010 WL 3154566 at *6 n.90.

MetLife was given full discretionary authority to administer the plan (Pl.'s Response to Defs.' 56.1 ¶ 9), so the arbitrary and capricious standard of review is appropriate. MetLife also concedes it operated under a structural conflict of interest (Defendants' Reply Memorandum of Law ("Defs.' Reply"), dated August 13, 2010 (Docket Item 61), at 7).  I must, therefore, consider this factor in determining whether MetLife's denial of benefits to plaintiff was arbitrary and capricious.

### 2.  MetLife's Decision Was Not Arbitrary and Capricious

My analysis necessarily includes MetLife's initial decision to disburse Life Benefits to Edward D. Wagner's children as well as its denial of plaintiff's claim after she came forward.  I conclude that MetLife was not arbitrary and capricious, and I respectfully recommend that the court grant summary judgment for MetLife and United on this issue.

a.   <u>Initial Decision</u>

"Judicial review of defendant's denial of ERISA plan benefits to plaintiff . . . is concededly limited to a review of the administrative record."  <u>Maskara v. First Unum Life Ins. Co.</u>, 03 Civ. 498 (MHD), 2004 WL 1562722 at *1 (S.D.N.Y. July 13, 2004) (Dolinger, M.J.), <u>citing</u> <u>Miller v. United Welfare Fund</u>, <u>supra</u>, 72 F.3d at 1071; <u>see</u> <u>also</u> <u>Cirincione v. Plumbers Local Union No. 200 Pension Fund</u>, 2010 WL 5150169 at *2 (2d Cir. Dec. 15, 2010); <u>Richard v. Fleet Fin. Grp. Inc. Ltd. Emp. Benefits Plan</u>, <u>supra</u>, 367 F. App'x at 233.  Therefore, I evaluate MetLife's initial decision based solely on information before it on January 13, 2006, when it disbursed benefits to Edward Wagner and Elizabeth Wagner.

Because Edward D. Wagner died without naming a Life Benefits beneficiary, MetLife could disburse benefits to surviving children provided that there was no surviving spouse. At the time of disbursement, MetLife possessed:  (1) a Non-Retiree Death Notification Form completed by United following Elizabeth Wagner's telephone call, noting "no bene[ficiary] on file"; (2) a completed Employer's Statement calculating Life Benefits; (3) a certified copy of the Report of Death of an American Citizen Abroad listing the cause of death and noting

that decedent's remains were shipped to the same town in which
Edward D. Wagner's children resided; (4) a Claimant's Affidavit
from Edward Wagner indicating that decedent was divorced from
Susan Wagner on November 27, 2002, with no mention of plaintiff,
and (5) Claimant's Statements from Edward Wagner and Elizabeth
Wagner certifying that decedent was divorced.

MetLife had no notice of a competing claim at the
time.[9]  Thus, the administrative record pointed to the definitive
conclusion that Edward D. Wagner had no spouse at the time of his
death, and that there was, therefore, no one with a claim
superior to his children's claim.  These documents clearly meet
the substantial evidence standard.

Plaintiff argues that MetLife did not follow its
procedures when it made to Edward D. Wagner's children.  First,
she points out that Plan instructions directed that Life Benefits
forms should be obtained from the employer.  She also argues that
a MetLife claim instruction form required employers to fill out
the Employer's Statement and distribute the remaining forms to
claimants.  Finally, she argues that Donna Wheat was a MetLife

---

[9]Plaintiff claims she attempted to reach United before the
disbursement and claims she called the UBSC number listed in the
Summary Plan Description and left a message with an "urgent
request for a return call" which she never received (Plaintiff's
Memorandum of Law, dated July 16, 2010 (Docket Item 48), at 3).

employee, not a United employee, and that Wheat filled out the Employer's Statement.[10]   These arguments are not persuasive.

The Plan's Summary Plan Description required that any "claim for loss of life must be filed by contacting the United Benefit Service Center (UBSC) at 1-888-825-0188.  The UBSC will provide MetLife with the necessary information to initiate the claim process."  Plaintiff concedes that this instruction conflicts with the Plan's instructions that claimants obtain forms from the employer (Pl.'s 56.1 ¶¶ 22-23).  The Second Circuit has repeatedly held that "[w]here the terms of a plan and the SPD conflict, the SPD controls."  Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 110, (2d Cir. 2003), citing Heidgerd v. Olin Corp., 906 F.2d 903, 907-08 (2d Cir. 1990); Frommert v. Conkright, supra, 433 F.3d at 265; Weinreb v. Hosp. For Joint Diseases Orthopaedic Inst., 404 F.3d 167, 170 (2d Cir. 2005). Thus, the analysis must center on whether the claim was initiated by calling the UBSC number and whether United provided sufficient information to initiate the claim process.

While the parties dispute who filled out the Employer's Statement, there is no dispute that Elizabeth Wagner informed

---

[10]MetLife and United maintain the form "manifestly was not completed by MetLife" (MetLife and United's Memorandum in Opposition ("Defs.' Opp.") at 10).

United of Edward D. Wagner's death and that United sent a
completed Non-Retiree Death Notification Form to MetLife (Pl.'s
Response to Defs.' 56.1 ¶¶ 13-14).  Notably, one of the United
representative's contact numbers on this form is the UBSC
telephone number (Ex. C-4 to Espinosa Decl., at WAGNER 000258).
Therefore, it is immaterial who completed the Employer's
Statement or whether Wheat is a MetLife employee, because in any
event, United transmitted sufficient information to MetLife to
proceed, namely:  (1) claimant contact information; (2) the Life
Benefits amount, and (3) confirmation that there was no
beneficiary was on file.  Therefore, I find that MetLife's
decision to disburse benefits to Edward and Elizabeth Wagner was
not arbitrary and capricious, because United and Wagner followed
the Summary Plan Description protocol, MetLife had the numerous
aforementioned documents before it and MetLife was not aware of
any conflicting claim.

> b.  Denial of Claim

On May 7, 2007, nearly 16 months after paying benefits
to decedent's children, MetLife received a letter from plaintiff
requesting benefits.  Plaintiff then corresponded with MetLife
for over a year before filing suit.  During this period,
plaintiff added to the administrative record.  MetLife was under

a conflict of interest during this period, because its determination of whether plaintiff was a beneficiary was at odds with its policy against paying claims twice.  Nevertheless, I conclude that MetLife's decision to deny plaintiff's claim was not arbitrary and capricious.

MetLife paid the claim to Edward D. Wagner's children and believed the matter was closed pursuant to a Plan provision that "[a]ny payment will discharge the insurance company's liability for the amount so paid" (Summary Plan Description, January 2003, annexed as Ex. B to Espinosa Decl., at L-5). MetLife obviously and appropriately believed that this term of an ERISA-governed plan was controlling.  In Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, ___ U.S. ___, 129 S. Ct. 865, 875 (2009), the United States Supreme Court instructed that an ERISA claim "stands or falls by 'the terms of the plan.'" (quoting 29 U.S.C. § 1132(a)(1)(B)).

> The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule:  'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.'

Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, supra, ___ U.S. ___, 129 S. Ct. at 875-76, quoting Fox Valley & Vicinity

34

Const. Workers Pension Fund v. Brown, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting).

        In addition, the Summary Plan Description's provision that payment discharges MetLife to the extent of the payment is entirely consistent with common law and is not the product of any conflict of interest.  MetLife sent plaintiff numerous letters stating it paid the claim to Edward Wagner and Elizabeth Wagner "in good faith" (Letter dated June 6, 2007, annexed as Ex. C-4 to Espinosa Decl., at WAGNER 000266-267; Letter dated September 20, 2007, annexed as Ex. C-4 to Espinosa Decl., at WAGNER 000273-274); Letter dated August 4, 2008, annexed as Ex. C-2 to Espinosa Decl., at WAGNER 000213), and there is no evidence in the record suggesting the contrary.  There is a "widespread" common-law principle that "an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims." Crosby v. Crosby, 986 F.2d 79, 83 (4th Cir. 1993) (citations omitted); Weed v. Equitable Life Assurance Soc'y of U.S., 288 F.2d 463, 464 (5th Cir. 1961); Pabon Lugo v. MONY Life Ins. Co. of Am., 465 F. Supp. 2d 123, 130 (D.P.R 2006); Coots v. Allstate Life Ins. Co., 313 F. Supp. 2d 539, 544 (D. Md. 2004); Phoenix Mut. Life Ins. Co. v. Adams, 828 F. Supp. 379, 386 (D.S.C. 1993).

In Crosby v. Crosby, supra, 986 F.2d at 81-83, the Fourth Circuit upheld benefit payments made by MetLife to a plan participant's second wife because of the documentation supporting her claim and lack of notice of a competing claim.  The first wife -- who was the legal widow because she had never divorced the participant -- sought to recover the payments.  Crosby v. Crosby, supra, 986 F.2d at 81.  Reviewing for abuse of discretion, the Fourth Circuit held that the administrator's "determination was reasonable in light of the documentation relied upon" at the time of disbursement because the plan participant had designated the second wife his beneficiary and the second wife produced a marriage certificate.  Crosby v. Crosby, supra, 986 F.2d at 83.

Plaintiff argues that Crosby v. Crosby is distinguishable on its facts because of the presence of the marriage certificate in that case.  She argues that in Crosby, MetLife "reasonably" relied on the decedent's designation of his second wife as his beneficiary -- and the second wife's marriage certificate -- as evidence that she was his legal widow (Plaintiff's Memorandum of Law ("Pl.'s Mem."), dated July 16, 2010 (Docket Item 48) at 8.  She further argues that Crosby is not controlling because Edward D. Wagner, unlike the decedent in Crosby, did not name a beneficiary.

36

I do not find plaintiff's argument to be persuasive. In both cases, MetLife followed an established protocol for paying benefits.  In both cases, MetLife also relied on both internal documents and documents supplied by claimants.  I also note that perhaps the most instructive lesson of <u>Crosby</u> -- as MetLife and United correctly point out -- is that a marriage certificate is not irrefutable proof of a legal marriage.

Here, substantial evidence justified disbursement to Edward D. Wagner's children.  Under the Fourth Circuit's holding, this would appear to end the analysis, because review of the determination centers on "the documentation relied upon in making this determination." <u>Crosby v. Crosby</u>, <u>supra</u>, 986 F.2d at 83. Plaintiff subsequently submitted documentation to MetLife, including a marriage certificate, a document signed by decedent on January 31, 2002, stating that there was no legal impediment to his marriage to plaintiff and a 2002 Benefit Confirmation Form listing plaintiff as decedent's medical and dental beneficiary. Nothing submitted by plaintiff during this period disturbs my conclusion that MetLife properly disbursed the benefits on the record it had at the time.

Plaintiff argues that MetLife and United should have known of plaintiff's status as Edward D. Wagner's wife through the 2002 Benefit Confirmation Form which identified plaintiff as

Edward D. Wagner's wife, particularly because MetLife administered the dental plan benefits (see Defs.' 56.1 ¶ 54, citing Ex. C-2 to Espinosa Decl., at WAGNER 000201).  She contends that this information was in the companies' records and should have been considered before MetLife paid decedent's children.  Plaintiff cites no authority for her argument that a plan administrator, in paying life insurance benefits, has to search all of its corporate records for the existence of potentially conflicting claims.  MetLife and United respond by arguing that privacy regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") prohibited the employees administering life insurance benefits from accessing information maintained by those employees of MetLife that administered health and dental insurance benefits.  In support of their argument, United and MetLife cite 45 C.F.R. §§ 164.105(a), 164.501 and 164.502.

        Both parties' arguments on this issue are unconvincing. None of the regulations cited by United and MetLife clearly lead to the conclusion United and MetLife ask me to make.  More significantly, MetLife offers no internal policy manuals or similar documents instructing its employees that documents generated by MetLife's health insurance business are "off limits" to employees involved in its life insurance business.  If one

38

class of MetLife employees were legally prohibited from having access to information in the possession of other MetLife employees, one would think that MetLife would formally advise its employees of this limitation. Finally, the notion that the life insurance business does not involve protected health information, as that term is defined in 45 C.F.R. § 160.103, appears to be fundamentally flawed. I take judicial notice of the fact that many life insurance companies require applicants to submit medical records or to submit to a physical examination before issuing a policy. Thus, the proposition that the life insurance business does not involve protected health information appears to be inconsistent with common business practice.

Nevertheless, plaintiff's argument also fails. In reviewing MetLife's decision to pay the life insurance proceeds to Edward Wagner and Elizabeth Wagner, I may consider "only the evidence that was before the administrator when it made its decision." Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 462 (2d Cir. 2001); accord Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) ("Most circuits have declared that, in reviewing decisions of plan fiduciaries under the arbitrary and capricious standard, district courts may consider only the evidence that the fiduciaries themselves considered. . . . We follow the majority of our sister circuits

39

in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record.").  There is no evidence that the 2002 Benefit Confirmation Form which identified plaintiff as Edward D. Wagner's wife was actually considered by MetLife or before MetLife when made its decision to pay benefits to Edward and Elizabeth Wagner.  Accordingly, the foregoing authorities teach that it cannot be considered here.

Finally, while MetLife's repeated denials of plaintiff's claim were undoubtedly due, in part, to their conflict of interest, the record reflects that they were not arbitrary and capricious.  Their decision was not only based on the terms of the plan but also supported by common law. Additionally, MetLife reviewed the file each time plaintiff supplemented the record and even reached out, unsuccessfully, to Edward Wagner to produce a divorce decree or similar document. Overturning a benefit denial requires finding that a decision was erroneous as a matter of law, without reason or lacking substantial evidence; given this standard, I cannot find MetLife's actions to be so deficient as to justify such a reversal.  For these reasons, I recommend that MetLife and United's motion for summary judgment be granted with respect to this claim, and that plaintiff's motion be denied.

40

D.   Breach of
     <u>Fiduciary Duties</u>

ERISA Section 404 provides in relevant part that "a
fiduciary shall discharge his duties with respect to a plan
solely in the interest of the participants and beneficiaries."  A
fiduciary must discharge his duties exclusively to provide
"benefits to participants and their beneficiaries" with the care,
skill and diligence of a prudent man under similar circumstances
and according to "the documents and instruments governing the
plan."  29 U.S.C. § 1104.

Plaintiff claims that MetLife and United breached their
fiduciary duties by failing "to provide promised benefits to the
rightful beneficiary of the plan," failing to exercise prudence
or loyalty and failing to conduct a full and fair review (Amend.
Compl. ¶¶ 19, 33-34, 36-41).  In addition to the arguments
rejected above, plaintiff contends that MetLife:  (1) failed to
provide documents and claim forms to plaintiff; (2) failed to
describe the Plan's appeal procedure, including the right to sue;
(3) failed to scrutinize representations made by Edward D.
Wagner's children, and (4) gave conflicting reasons for the
denial (Amend. Compl. ¶¶ 26-28, 37-38).  Plaintiff argues that
United:  (1) provided incomplete information to MetLife;
(2) failed to attach "any enrollment forms and beneficiary

41

designations" it retained, including records in Edward D. Wagner's medical plan, dental plan and travel plan; (3) never responded to letters, emails or phone calls both before and after benefits were paid; (4) failed to monitor the "imprudent actions and decisions" MetLife made in processing the claim, and (5) failed to exercise reasonable efforts to remedy MetLife's breach (Pl.'s Mem. at 27-28; see also Amend. Compl. ¶¶ 45-49). Plaintiff seeks the full face value of Plan benefits plus interest, damages, de novo review and a presumption of exhaustion of remedies (Am. Compl. at ¶¶ 20, 35, 41, 50).

MetLife and United oppose these claims on the grounds that:  (1) plaintiff fails to seek cognizable equitable relief; (2) United is not a fiduciary under ERISA; (3) MetLife owed no continuing fiduciary duties to plaintiff once benefits were paid; and (4) MetLife did not breach its fiduciary duties (Defs.' Opp. at 14-20).  I need only address their first argument.

Plaintiff asserts her claim for breach of fiduciary duty under Section 502(a)(3), which permits a court to grant only equitable relief.

> Section 502(a)(3) has been characterized as a "catch-all" provision which normally is invoked only when relief is not available under § 502(a)(1)(B). Varity Corp. v. Howe, 516 U.S. 489, 512 (1996); see also id. (stating that § 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries

caused by violations that § 502 does not elsewhere
adequately remedy").

Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d
572, 578 (2d Cir. 2006).

Since Varity Corp. v. Howe, supra, 516 U.S. at 512, was
decided, some United States Courts of Appeals have held that a
claim for breach of fiduciary duty under ERISA Section 502(a)(3)
is precluded where a claim lies under other provisions of Section
502, such as 502(a)(1)(B).  See Belluardo v. Cox Enters., Inc.,
157 F. App'x 823, 829 (6th Cir. 2005); Ford v. MCI Commc'ns Corp.
Health & Welfare Plan, 399 F.3d 1076, 1082-83 (9th Cir. 2005).
However, the Second Circuit has "permitted plaintiffs to pursue
breach of fiduciary duty claims under both ERISA § 502(a)(1)(B)
and § 502(a)(3) under certain circumstances."  Keir v.
Unumprovident Corp., 02 Civ. 8781 (DLC), 2010 WL 3566878 at *7
(S.D.N.Y. Sept. 14, 2010) (Cote, D.J.), citing Frommert v.
Conkright, 433 F.3d 254, 272 (2d Cir. 2006); and Devlin v. Empire
Blue Cross & Blue Shield, 274 F.3d 76, 89-90 (2d Cir. 2001).

The United States Supreme Court has also held that
Section 502(a)(3) is limited to "'those categories of relief that
were typically available in equity.'"  Great-West Life & Annuity
Ins. Co. v. Knudson, 534 U.S. 204, 209-10 (2002) (emphasis in
original), quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256

43

(1993).  Where a plaintiff is "seeking legal relief -- the

imposition of personal liability on [a defendant] for a

contractual obligation to pay money -- § 502(a)(3) does not

authorize [the] action."  Great-West Life & Annuity Ins. Co. v.

Knudson, supra, 534 U.S. at 221.

> ERISA Section 502(a)(3)
>
> authorizes solely equitable relief, and under the
> Supreme Court's decision in Great-West, supra, this
> means that money awards are available in suits brought
> under § 502(a)(3) "only in very limited circumstances."
> Gerosa v. Savasta & Co., 329 F.3d 317, 321 (2d Cir.
> 2003); see also Great-West, 534 U.S. at 211, 122 S. Ct.
> 708 ("Those rare cases in which a court of equity would
> decree specific performance of a contract to transfer
> funds were suits that, unlike the present case, sought
> to prevent future losses that either were incalculable
> or would be greater than the sum awarded.").

Wilkins v. Mason Tenders Dist. Council Pension Fund, supra, 445

F.3d at 578-79 (emphasis in original).

> The Supreme Court has delineated what forms of
> equitable restitution are available under § 502(a)(3),
> distinguishing permissible forms of equitable
> restitution such as employment of a constructive trust
> or of an equitable lien from forms of legal
> restitution.  [Great-West Life & Annuity Ins. Co. v.
> Knudson, supra, 534 U.S. at 213.]  Thus, a constructive
> trust or equitable lien is imposed when, "in the eyes
> of equity," a plaintiff is "the true owner" of funds or
> property, and the "money or property identified as
> belonging in good conscience to the plaintiff [can]
> clearly be traced back to particular funds or property
> in the defendant's possession."  Id.

Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir.

2005).

In Sereboff v. Mid Atl. Med. Servs., Inc., the United
States Supreme Court "made clear that section 502(a)(3) requires
both that the 'basis for [the] claim' and the 'nature of the
recovery' sought be equitable." Coan v. Kaufman, 457 F.3d 250,
264 (2d Cir. 2006), quoting 547 U.S. 356, 362-363 (2006)
(emphasis in original).  Thus, the Second Circuit has held that
"[e]ven if breach of fiduciary duty is an equitable claim . . .
remedies for breach of that fiduciary duty do not constitute
'equitable relief' under section 502(a)(3) unless the plaintiff
seeks a 'categor[y] of relief that [was] typically available in
equity.'"  Coan v. Kaufman, supra, 457 F.3d at 264, quoting
Mertens v. Hewitt Assocs., supra, 508 U.S. at 256 (emphasis
omitted); Fisher v. Penn Traffic Co., 319 F. App'x 34, 35 (2d
Cir. 2009), cert. denied, ___ U.S. ___, 130 S. Ct. 494 (2009).

        The Second Circuit has repeatedly upheld dismissals of
claims for breach of fiduciary duty under ERISA Section 502(a)(3)
that sought monetary damages.  Hall v. Kodak Ret. Income Plan,
363 F. App'x 103, 107 (2d Cir. 2010) ("To the extent
[plaintiff's] claim is that she is entitled to an annuity
pursuant to the terms of the Plan . . . such relief is clearly
legal rather than equitable and is therefore not available under
§ 502(a)(3)."); Fisher v. Penn Traffic Co., supra, 319 F. App'x
at 35; Krauss v. Oxford Health Plans, Inc., supra, 517 F.3d at

630; Coan v. Kaufman, supra, 457 F.3d at 264 ("[T]he alternative
relief [plaintiff] seeks under section 502(a)(3), an injunction
requiring the defendants to restore funds to the defunct 401(k)
plan to be distributed to former participants, 'does not
transform what is effectively a money damages request into
equitable relief.' . . . [Plaintiff's] attempt to cast this
action as one for 'equitable relief' therefore fails" (citation
omitted)); Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 173
F. App'x 936, 941 (2d Cir. 2006) ("[Plaintiff's] Section
502(a)(3) claims . . . fail because they are inherently legal
rather than equitable in nature. . . . [Plaintiff's] 'prayer for
declaratory relief is merely a prelude to a claim for damages.'
. . . The same is true of his request that the court order
[defendant] to make past-due contributions to his pension plan
. . . ." (citation omitted)); Nechis v. Oxford Health Plans,
Inc., 421 F.3d 96, 103-04 (2d Cir. 2005) ("the language of
[plaintiff's] request for relief involves words of contract
rather than those of equity, a circumstance that undermines her
claim that the district court misconstrued the nature of the
relief that she has sought. ").

        However, in Frommert v. Conkright, supra, 433 F.3d at
272, the Second Circuit rejected a district court's holding "that
all of the relief sought by the plaintiffs in their claim for

breach of fiduciary duties can be adequately addressed by the
relief available under § 502(a)(1)(B)."  In <u>Turcotte v. Blue</u>
<u>Cross & Blue Shield of Mass., Inc.</u>, 07 Civ. 4023 (RJS), 2008 WL
4615903 at *5 (S.D.N.Y. Oct. 14, 2008), the Honorable Richard J.
Sullivan, United States District Judge, discussed the Second
Circuit's holding in <u>Frommert v. Conkright</u>, <u>supra</u>, stating that

> [i]n <u>Frommert</u> . . . the Second Circuit . . . directed
> the district court to 'determine what appropriate
> relief is necessary' were plaintiffs to prevail on
> their breach of fiduciary duty claim.  433 F.3d at 272
> (internal quotations omitted).  In essence, this
> language from <u>Frommert</u> simply stands for the
> proposition that relief under both § 1132(a)(1)(B) and
> 1132(a)(3) is not <u>per</u> <u>se</u> unavailable.  The precise form
> of relief Plaintiffs seek here, however, has already
> been deemed to be a legal, not equitable, remedy under
> the Second Circuit's decision in <u>Nechis</u>.  <u>See</u> 421 F.3d
> at 104.  Indeed, the <u>Frommert</u> court expressly rejected
> plaintiffs' claim for equitable relief to pursue
> payment of benefits, noting that '[w]hile plaintiffs
> seek to expand the nature of their claim by couching it
> in equitable terms to allow relief under
> [§ 1132(a)(3)], the gravamen of this action remains a
> claim for monetary compensation, and that, above all
> else, dictates the relief available.'  <u>Frommert</u>, 433
> F.3d at 270.

Here, I conclude that plaintiff's breach of fiduciary
duty claims under ERISA Section 502(a)(3) do not seek appropriate
equitable relief, because her claims seek the recovery of Plan
benefits and/or damages, <u>i.e.</u>, money.  Plaintiff's Section
502(a)(3) claims are indistinguishable from her Section
502(a)(1)(B) claims to recover Plan benefits (<u>see</u> Amend. Compl.

¶¶ 19, 33, 40, 49).  In plaintiff's Amended Complaint, her claims
against MetLife and United repeatedly refer to either "benefits"
or "damages," and no reference is made the imposition of a
constructive trust or equitable lien.  Furthermore, plaintiff
does not allege that she is the true owner of segregated,
identifiable funds in MetLife or United's possession.  Thus, the
nature of the remedy she seeks is legal, and not equitable.  See
Turcotte v. Blue Cross & Blue Shield of Mass., Inc., supra, 2008
WL 4615903 at *5.  The fact that plaintiff also requests other
relief -- a de novo standard of review and presumption of an
exhaustion of administrative remedies -- does not change this
analysis.  See Coan v. Kaufman, supra, 457 F.3d at 264; Yoon v.
Fordham Univ. Faculty & Admin. Ret. Plan, supra, 173 F. App'x at
941.  Plaintiff's claims, at heart, seek a financial remedy.

        Finally, to the extent plaintiff's claim that MetLife
denied her a full and fair review could be considered under ERISA
Section 503(2), 29 U.S.C. § 1133(2), I nevertheless conclude that
she is not entitled to relief on this claim, either.  See Krauss
v. Oxford Health Plans, Inc., supra, 517 F.3d at 630 (citations
omitted); Giordano v. Thomson, 564 F.3d 163, 168 n.3 (2d Cir.
2009).  Section 503(2) states that "every employee benefit plan
shall . . . afford a reasonable opportunity to any participant
whose claim for benefits has been denied for a full and fair

review by the appropriate named fiduciary of the decision denying the claim."  A full and fair review "concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review." Krauss v. Oxford Health Plans, Inc., supra, 517 F.3d at 630 (citations omitted); Giordano v. Thomson, 564 F.3d 163, 168 n.3 (2d Cir. 2009); Gregory v. Metro. Life Ins. Co., 648 F. Supp. 2d 591, 599 (D. Vt. 2009).  However, where remand would be futile, it is not necessary.  Krauss v. Oxford Health Plans, Inc., supra, 517 F.3d at 630 (citation omitted); Giordano v. Thomson, supra, 564 F.3d at 168 n.3.  While plaintiff expressly argues that remand would be futile (Pl.'s Mem. at 29), I must independently analyze this issue.

When plaintiff challenged the payment of benefits to Edward D. Wagner's children and provided more information and documentation with each subsequent letter, MetLife evaluated her information, reconsidered the record and informed her of its decision.  While MetLife continuously denied the claim, the administrative record supports the conclusion that it performed a thorough review.  Based on this history, I conclude that if the matter were remanded, MetLife would continue to maintain its position that its payment discharged its liability pursuant to the Plan's terms, and that the payment was made in good faith without notice of a competing claim.  In other words, remand here

49

would be a "useless formality."  Krauss v. Oxford Health Plans,
Inc., supra, 517 F.3d at 630, quoting Miller v. United Welfare
Fund, supra, 72 F.3d at 1071.  For these reasons, I conclude that
plaintiff is not entitled to any appropriate equitable relief for
breach of fiduciary duty, and I respectfully recommend that
summary judgment for MetLife and United be granted on this issue.

     E.   Attorney's Fees

       Plaintiff also seeks attorney's fees as a separate
claim against MetLife and United.  MetLife and United argue that
plaintiff's request for attorney's fees is "premature and
unsustainable" because she has not achieved any success on her
claims (Defs.' Mem. at 18-19).

       An application for attorney's fees in an ERISA action
is governed by 29 U.S.C. § 1132(g), which provides:

> In any action under this subchapter . . . by a
> participant, beneficiary, or fiduciary, the court in
> its discretion may allow a reasonable attorney's fee
> and costs of action to either party.

       A litigant "must show 'some degree of success on the
merits' before a court may award attorney's fees under
§ 1132(g)(1)."  Hardt v. Reliance Standard Life Ins. Co., ___
U.S. ___, 130 S. Ct. 2149, 2158 (2010), quoting Ruckelshaus v.
Sierra Club, 463 U.S. 680, 694 (1983); Kelly v. Handy & Harman,

supra, 2011 WL 159601 at *2.  Because plaintiff has shown no success on the merits, I recommend that her motion for summary judgment be denied and that United and MetLife's motion for summary judgment be granted.

    F.  Motion to Strike

        MetLife and United also move to strike various documents submitted by plaintiff in support of her motion for summary judgment.  Because I have not considered any of these documents identified by MetLife and United, I recommend that this motion be denied as moot.

IV.  Conclusion

        Accordingly, I respectfully recommend that MetLife and United's motion for summary judgment (Docket Item 42) be granted, plaintiff's cross-motion for summary judgment (Docket Items 36, 47) be denied and MetLife and United's motion to strike (Docket Items 52) be denied as moot.

V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(c)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written

51

objections.  See also Fed. R. Civ. P. 6(a).  Such objections (and

responses thereto) shall be filed with the Clerk of the Court,

with courtesy copies delivered to the Chambers of the Honorable

George B. Daniels, United States District Judge, 500 Pearl

Street, Room 630, and to the Chambers of the undersigned, 500

Pearl Street, Room 750, New York, New York 10007.  Any requests

for an extension of time for filing objections must be directed

to Judge Daniels.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS

**WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE

REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States

v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO

Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank

v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        February 28, 2011

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Benjy M. Corpuz, Esq.
Corpuz and Associates, P.C.
370 Seventh Avenue
New York, New York 10001

Michael H. Bernstein, Esq.
John T. Seybert, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
39th Floor
125 Broad Street
New York, New York 10004-2400

Edward Wagner
9318 W. 142nd Street
Orland Park, Illinois 60462