UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SONIA I. WAGNER, Surviving Spouse,
herein represented by CORPUZ AND
ASSOCIATES, P.C., as her Attorney-in-Fact,

    Civil Action No.:08-CV-11284(GBD)(HBP)

        Plaintiff,

**PLAINTIFF'S WRITTEN OBJECTION
TO MAGISTRATE PITMAN'S REPORT
AND RECOMMENDATION**

-against-

METROPOLITAN LIFE INSURANCE COMPANY,
UNITED AIR LINES, INC.,
EDWARD WAGNER AND
ELIZABETH WAGNER,

        Defendants.
-------------------------------------------------------------------X

    COMES NOW, Plaintiff, Sonia I. Wagner, by and through undersigned Counsel, and pursuant to 28 U.S.C. § 636 (b) (1) (c) and Rule 72 (b) of the Federal Rules of Civil Procedure, hereby files her Written Objections to Magistrate Henry Pitman's Report and Recommendation, as follows:

<u>Introduction</u>

    The Magistrate Judge's Report and Recommendation is 53 pages long and while the Plaintiff has tried to be comprehensive and specific about her objections and provided reasons for her objections whenever possible, she asks the Court to note that she objects to some of the Magistrate' Judge's findings of fact and she objects to all the Magistrate Judge's conclusion of law with one exception. Plaintiff Sonia I. Wagner agrees that Plaintiff's claims are not barred by laches, and that the Magistrate Judge was correct in recommending that MetLife and United's motion for summary judgment on this basis be denied.

<u>Instructions for Filing a Claim</u>

    After the Magistrate Judge stated (in pages 5 and 6 of the Report and Recommendation) that: "The Plan provided that claimants for Life Benefits complete a form and submit an original certified

1

death certificate that included the cause of death (Defs. ' 56.1 ¶ 8 (citation omitted))," the Magistrate Judge omitted the next paragraph/sentence, which states, as follows:

"Life Claim form(s) must be submitted in accordance with the instructions on the MetLife claim form." (Ex. A-2 to Espinosa Decl., at WAGNER 000042, 000085)

This above paragraph/sentence is important as it deals with the instruction for submitting claim forms as distinguished from instructions for filling up the claim form. Likewise, the paragraph/sentence is crucial as it is the basis of the Magistrate Judge's succeeding findings (in page 6 of the Report and Recommendation) that: "MetLife's Insurance Claim Form included an Employer's Statement (Ex. C-2 to Espinosa Decl., at WAGNER 0002210222). On an attached instruction form, MetLife directed the employer to detach the instructions, complete the Employer's Statement and give the claimant the remaining pages to complete the Claimant's Statement (Ex. C-2 to Espinosa Decl., at WAGNER 000220. The employer was to submit the Employer's Statement to MetLife with 'all other pertinent claim information (such as enrollment forms and beneficiary designations)' (Ex. C-2 to Espinosa Decl., at WAGNER 000220)."

The Magistrate Judge correctly noted in his footnote 3 (page 6) that: "MetLife and United dispute that the instruction form was applicable to United Life Benefit claims, noting that plaintiff submitted the form in her correspondence." But aside from a mere statement disputing the applicability of the instruction form, MetLife has not presented any contrary instruction form applicable to United Benefits Claim. Indeed, MetLife offers no document or policy manual, even an internal one, or similar document instructing its employees, the employer and claimants on how to process and/or submit United Life Benefit claims.

Nonetheless, in Woody v. Fortis Benefits Ins. Co., 2000 WL 2458 (E.D. La. 2000), the Court held that although additional medical evidence is precluded, a participant may submit additional evidence with respect to the plan administrators interpretation of the plan.

And, as correctly pointed out by the Magistrate Judge: "According to the Summary Plan Description, '[a] claim for loss of life must be filed by contacting the United Benefits Service Center (UBSC) at 1-88-825-0188. The UBSC will provide MetLife with the necessary information to initiate the claim process' (SPD, annexed as Ex. B to Espinosa Decl., at L-7)." Clearly, a correspondence or similar document from UBSC, providing MetLife with the necessary information, merely allows MetLife "to initiate the claim process" but, obviously, MetLife, in initiating the claim process must still comply with the Plan and its own instructions in submitting claim forms.

Clearly, in this case, MetLife failed to follow it own and the Plan's claim procedure and instructions under the Plan. After having been informed/notified of the death of the assured, under the claim procedure of the Plan and the Employer's Instructions, MetLife was suppose to send out a claim packet (containing Employer's Instructions and Employer Statement Form and Instructions to Claimants and Claimant's Statement Form) to UAL. In turn, UAL was suppose to send the Instructions to Claimants and Claimant's Statement Form to the beneficiaries or potential beneficiaries. This procedure is very important and was set up for a purpose - to prevent fraud by filtering fraudulent claims because it is the employer UAL, more than any other entity, which would or should know potential beneficiaries of a deceased employee based on information existing in the employee's 201 file kept by UAL and /or stored in UAL's computer system. The procedure is even more compelling, when, as in this case, there was no beneficiary designation filled up and/or elected by the plan participant and, the benefits of the plan is to be paid in the following order:  spouse, children, parents, siblings.

Instead MetLife directly dealt with the children (Edward Wagner Jr. and Elizabeth Wagner) when MetLife directly mailed claim forms (Affidavit for Claim Consideration Form, Claimant's Statement/TCA Form and Return Envelop) to Edward Wagner, Jr. (WAGNER 000251 and 252) instead of the employer UAL.  As a result, the employer UAL did not have the opportunity to check its records and identify the correct and rightful beneficiary of the Plan.

3

In Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan, 698 F. 2d 593, 599 (2d Cir. 1985), the Second Circuit observed that the term arbitrary and capricious does not describe the plan administrators' subjective attitude, but its objective compliance with the terms of the plan being administered. Non-compliance with plan language or contractual obligation has consistently been held to be arbitrary and capricious.

Disbursement of Decedent's Benefits

The Magistrate Judge took pains and correctly noted (second paragraph, page 7 of Report and Recommendation) the entries in the Non-Retiree Death Notification Form (annex as Ex. C-4 to Espinosa Decl., at WAGNER 000258) such as the date (December 5, 2005) when Elizabeth Wagner advised United of her father's death by telephone, that she spoke with Laurie Fahrenkrog, who filled out the form, her contact numbers on the form, one of which is UBSC number listed in the Plans SPD and that the completed form contained a hand written note "no bene[ficiary] on file"  However, the Magistrate Judge failed to note the date of receipt of the form by MetLife, which is "Dec 29 2005"

Again, the receipt date of the Non-Retiree Death Notification Form from UBSC is crucial as pursuant to the SPD, "UBSC  will provide MetLife with the necessary information to initiate the claim process."  Clearly, when Metlife Customer Service Representative Donna L. Wheat mailed to Edward Wagner, Edward  D. Wagner's son, on December 22, 2005, a "beneficiary death packet" (first paragraph, page 8 of Report and Recommendation), UBSC has not yet provided MetLife with the necessary information to initiate the claim process.

Furthermore,  the Magistrate Judge also noted that the beneficiary death packet mailed to Edward Wagner "was sent to the same address in Orland Park, Illinois, that Elizabeth Wagner had provided United."  Now, how will MetLife Customer Representative Donna L. Wheat know of this information - on where to send the beneficiary death packet (on December 22, 2005) when MetLife only received the Non-Retiree Death Notification Form (containing the information) from UBSC on December 29, 2005?

4

Additionally, the Magistrate Judge correctly noted that in the Employer's Statement calculating Edward D. Wagner's Benefits, a certain "Donna Wheat signed the form where an employer's authorized representative's signature was required (Ex. C-3 to Espinosa Decl., at WAGNER 000247)" (pages 8 and 9 of the Report and Recommendation). However, the Magistrate Judge also noted in his footnote 4 (page 8) that: "MetLife and United dispute that Wheat is a MetLife Customer Representative and note that the letter is question contained 'United Airlines' on the right side of the letterhead." without any reference to any Defendants' pleadings on where the Magistrate Judge got this impression.

This is not correct. On the contrary, MetLife and United merely stated that: "Plaintiff argues that the 'Employer Statement' was prepared by a MetLife employee but does not explain how this is probative of the fact that MetLife should have been on notice of the purported fraudulent Affidavit and Claimant Statements from the Decedent's children." (page 10, second paragraph, MetLife and United's MOL in Opposition to Plaintiff's Motion for Summary Judgment, dated July 30, 2010). Clearly, MetLife and United does not dispute that Wheat is a MetLife Customer Representative, but, in effect admit the same. But, again, SO WHAT? – is actually the position off MetLife and United. And, which, unfortunately, was actually adopted and assumed by the Magistrate Judge.

Clearly, there is no dispute that the Employer's Statement was admittedly prepared and signed by "Donna Wheat" who is the same MetLife Customer Service Representative Donna L Wheat, who on December 22, 2005 mailed a "beneficiary death packet" to Edward Wagner, that this same Employer Statement does not identify any beneficiaries entitled to receive the life benefits of the Plan and that the same Employer's Statement did not have the required enrollment forms (and beneficiary designation). Unquestionably, therefore, in effect, as if there is no Employer Statement and as if the employer UAL never actually participated in the claims process, in clear violation of the Plan and MetLife's Instructions in the submissions of claim forms.

5

a. Initial Decision

Given the foregoing backdrop, documents and statements received in violation of the Plan and MetLife's own claim procedure and instructions, and signed by a MetLife Customer Representative when it should have been signed by the employer's authorized representative is tainted or, at the very least, questionable.

The Magistrate Judge stressed that: "At the time of disbursement, MetLife possessed: (1) a Non-Retiree Death Notification Form completed by United following Elizabeth Wagner's telephone call, noting 'no bene[ficiary] on file'; (2) a completed Employer's Statement calculating Life Benefits; (3) a certified copy of the Report of Death of an American Citizen Abroad listing the cause of death and noting that decedent's remains were shipped to the same town in which Edward D. Wagner's children resides; (4) a Claimant's Affidavit from Edward Wagner indicating that the decedent was divorced from Susan Wagner on November 27, 2002, with no mention of plaintiff, and(5) Claimant's Statements from Edward Wagner  and Elizabeth Wagner certifying that the decedent was divorced." The Magistrate Judge then quickly concluded that "the administrative record pointed to the definitive conclusion that Edward D. Wagner had no spouse at the time of his death, and that there was, therefore, no one with a claim superior to his children's claim."

The conclusion is wrong. Certainly, MetLife could and/or should have asked for more documents – like divorced degree/papers, considering that the Claimant's indicated and claimed that the decedent was divorced (as with the divorce papers, MetLife could have immediately verified that the date of divorce is not 11-27-02 [November 27, 2002] as indicated in the Claimant's Affidavit but 11-30-01 [November 30, 2001]). Or MetLife could and/should have asked for more questions – such as, "Did the decedent re-marry?" Or MetLife could and/or should have communicated with the employer, to verify named spouse and/or dependents in the decedent's 201 File (Personnel File), more so if the Employer Statement MetLife received was signed by a MetLife Customer Service Representative and is clearly incomplete as it has no enrollment forms  (and beneficiary designation) attached. And, if only

6

MetLife communicated with the employer, United Airlines, MetLife could have easily been informed by United Airlines that as early as 2002, Plaintiff Sonia I. Wagner is already the named dependent spouse of plan participant Edward D. Wagner and has coverage (through Edward D. Wagner) for medical, dental (Administered by MetLife) and travel.

The Magistrate Judge also indicated in the last sentence, third paragraph, page 31, of the Report and Recommendation that: "Finally, she argues that Donna Wheat was a MetLife employee, not a United employee, and that Wheat filled out the Employer's Statement." with a footnote 10 stating that: "MetLife and United maintain the form "manifestly was not completed by MetLife" citing "MetLife and United's Memorandum in Opposition ('Defs.' Opp.') at 10."

Again, this is wrong. The Magistrate Judge misread MetLife and United statement. MetLife and United was referring to the Non-Retiree Death Notification Form and not the Employer Statement form that "which manifestly was not completed by MetLife".  On the contrary, as previously discussed, MetLife and United, in effect, admitted that the Employer Statement was filled up by a MetLife Customer Service Representative.

But, then again, to the Magistrate Judge, "it is immaterial who completed the Employer's Statement or whether Wheat is a MetLife employee, because in any event, United transmitted sufficient information to MetLife to proceed, namely: (1) claimant contact information; (2) the Life Benefits amount, and (3) confirmation that there was no beneficiary was on file."

The Magistrate Judge logic is incorrect.  (1) As previously discussed, the necessary information transmitted by United merely allows MetLife "to initiate the claim process."  And, this claim process that MetLife can initiate must, obviously, be in accordance with (and, more obviously, not in violation of) the Plan and its instructions in submitting claim forms. (2) The hand written "no bene on file" itched in the Non-Retiree Death Notification Form from UBSC is not a confirmation that there was no beneficiary on file.  If the Magistrate Judge wants confirmation, the Magistrate Judge should have turned to the Employer Statement to confirm that there was no beneficiary on file as the employer is

7

specifically directed in the Employer Statement to attached any enrollment forms and beneficiary designations. And, that if the employer has any questions, the employer is directed to contact the MetLife administrator responsible for the employer's group. But, if the Employer Statement was prepared, completed and signed by a MetLife Customer Representative, then the purpose of the Employer's Statement is defeated, as clearly, as if the employer never participated in the claims process in clear violation of the Plan and MetLife's Instructions in the processing and submission of claim forms.

b. Denial of Claim

The Magistrate Judge noted that: "MetLife paid the claim to Edward D. Wagner's children and believed the matter was closed pursuant to a Plan provision that '[a]ny payment will discharge the insurance company's liability for the amount so paid" (Summary Plan Description, January 2003, annexed as Ex. B to Espinosa Decl., at L-5)" and concluded that "MetLife obviously and appropriately believed that the term of the ERISA-governed plan was controlling." (Second paragraph, page 34 of the Report and Recommendation).

We disagree. MetLife's gross negligent and imprudent payment did not discharge its liability under the Plan. Under the factual circumstances of this case, the Magistrate Judge' conclusion is inconsistent with the Plan and ERISA's aims and purposes which is to provide benefits to the rightful beneficiaries of a plan participant. Certainly, a payment made and arrived at in violation of its own claim procedures and instructions, without any reasonable inquiry and investigation as to the truth and veracity of the information received, and in clear violation of its fiduciary duty of prudence as the claim determination was unsupported by competent and independent evidence is not a valid payment that will discharge MetLife's liability. Conduct inconsistent with plan purposes and interpretation which would create an inconsistency between the plan document and summary plan description can establish arbitrary and capricious conduct. Please see Lutheran Medical Center of Omaha v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan, 25 F. 3d 616 (8th Cir. 1994).

  The Magistrate Judge, in reviewing the case of Crosby v. Crosby, 986 F.2d 79, 83 (4th Cir. 1993), stressed that: "Reviewing for abuse of discretion, the Fourth Circuit held that the administrator's 'determination was reasonable in light of the documentation relied upon' at the time of disbursement because the plan participant had designated the second wife his beneficiary and the second wife produced a marriage certificate." (First paragraph, page 36 of the Report and Recommendation). And, the Magistrate Judge found Plaintiff's arguments that in "<u>Crosby</u>, MetLife 'reasonably' relied on the decedent's designation of his second wife as his beneficiary – and the second wife's marriage certificate - - as evidence that she was his legal widow" and that "<u>Crosby</u> is not controlling because Edward D. Wagner, unlike the decedent in <u>Crosby</u>, did not name a beneficiary" as unpersuasive because, "(I)n both cases, MetLife followed an established protocol for paying benefits" and "(I)n both cases, MetLife also relied on both internal documents and documents supplied by claimants." (Paragraphs 1 and 2, page 36; paragraph 1, page 37 of the Report and Recommendation).

  We disagree. The claimant in <u>Crosby</u> is the wife who is the designated beneficiary by the decedent and the claimant wife presented a marriage certificate. In the instant case, however, the claimants are the children of the decedent who declared that the decedent was divorced but did not present any independent proof of relationship and independent proof of divorce such as a divorce decree/judgment. Certainly, MetLife cannot be assumed to have "reasonably" relied on the Claimant's Affidavit and Claimants' Statements as evidence that they are the children of the decedent and that the decedent was divorced.

  And, considering that Edward D. Wagner, unlike the decedent in <u>Crosby</u>, did not name a beneficiary, MetLife should have strictly followed the Plan and its instructions in the processing of claims and MetLife should have made reasonable inquiry and investigation to, at the very least, verify the allegations in the Affidavit and Claimants' Statements. The fact that there was no named beneficiary to receive the benefits of the policy makes the issuance of verification requests a must, if not, compelling. The claimants are the children of the decedent. If the spouse is eliminated, they are next in

line to receive benefits. MetLife should have made reasonable inquiry, more especially so as in this case, where a category (spouse) in the line of succession is about to be eliminated. And, in this case, there is no dispute that MetLife violated the Plan and its claim procedure and paid the benefits of the Plan to the claimants without any question and/or reasonable verification and inquiry, whatsoever.

Curiously, it is not clear what internal documents were allegedly relied upon my MetLife but the only internal information that MetLife could have relied on, but it did not, was the fact that as early as 2002, Plaintiff Sonia I. Wagner is already the named eligible dependent spouse of Edward D. Wagner in his dental plan administered by MetLife.

ERISA's prudence standard has both a "substantive" aspect and a "procedural" aspect. A fiduciary is considered to have breached the duty of prudence when: (a) the particular conduct or transaction was inappropriate or (b) if the fiduciary failed to perform an adequate investigation or analysis before engaging in the conduct or entering into the transaction. Please see In re Unisys Savings Plan Litig., 74 F.3d 420 (3d Cir. 1996) (Evaluating prudence involves "focusing on a fiduciary's conduct in arriving at an investment decision not on its results" and on " whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.") . In this case, clearly MetLife failed in both the substantive aspect and the procedural aspect. Please see Zanditon v. Feinstein, 849 F.2d 692 (1st Cir. 1988) (Trustee breached duty of prudence by failing to conduct an independent investigation of plan loans and of the adequacy of the loans' underlying security); Fink v. National Sav. & Trust Co., 772 F.2d 951 (D.C. Cir 1985) (Breach of prudence requirement where fiduciary without adequate investigation, invested bulk of plan assets in employer's securities during time when plan investment were losing money); and Katsaros v. Cody, 744 F.2d 270 (2d Cir. 1984)(failure of trustee to investigate adequately propose

And finally, the Magistrate Judge concluded that: "[W]hile MetLife's repeated denials of plaintiff's claim were undoubtedly due in part, to their conflict of interest, the record reflects that they were not arbitrary and capricious. Their decision was not only based on the terms of the plan but also

10

supported by common law. Additionally, MetLife reviewed the file each time plaintiff supplemented the record and even reached out, unsuccessfully, to Edward Wagner to produce a divorce decree or similar document." (Second paragraph, page 40 of the Report and Recommendation).

This is not correct. Under the factual circumstances of this case, MetLife, after imprudently paying proceeds of life insurance benefits to the wrong party, tried its very best to cover up its mistakes by intentionally withholding claim forms and information, withheld review/appeal procedure, withheld critical advise/statement of right of Plaintiff to bring a civil action if claim is denied, provided confusing and contradictory basis and information on whether or not there was a named beneficiary to receive benefits and, ignored reliable evidence showing that Mrs. Wagner is the surviving spouse of the plan participant, thereby effectively denying Plaintiff a full and fair review of her claim so as not to pay benefits due to the Plaintiff.

Surprisingly, the Magistrate Judge took the effort in indicating that MetLife "even reached out, unsuccessfully, to Edward Wagner to produce a divorce decree or similar document" but failed to indicate that the effort to reached out and verify the claim was late. Likewise, the Magistrate Judge also failed to question why MetLife "reached out" only to Edward Wagner, who after receiving his share of the proceeds was no where to be found and has never communicated with MetLife ever since. Why not "reach out" to Elizabeth Wagner, who, as late as 11/14/2008, has been communicating and requesting for documents from MetLife? (WAGNER 000136). Or, why not "reached out" to Plaintiff, Sonia I. Wagner, who has long been communicating with MetLife requesting for information, guidance and advise on how to proceed? Or, at the very least, why not "reach out" to United Airlines, as the employer of the decedent, which should have vital information stored in the 201 File of the decedent kept and stored by the employer?

The answer is obvious. MetLife does not want to "reach out" and verify the claim further; and allow the introduction of more evidence in the Administrative File. MetLife knew and planned all along that when this case goes to review, the reviewer is limited to what is in the Administrative File. This is

11

the reason why MetLife, in its various and continuing denial of Plaintiff's claim, indicated and provided as little information as it could so as not to allow the Plaintiff to fully substantiating her claim and add to the administrative record. And, this is also the reason why, and as correctly observed by the Magistrate Judge that : "MetLife sent out the second 'paid in good faith' letter to plaintiff, dated September 20, 2007, but it made no mention of the conflicting dates (Ex. C-4 to Espinosa Decl., at WAGNER 000273-274)"  despite "MetLife supervisor Copperwheat noticed that plaintiff's purported date of marriage to plaintiff precede the date given by Edward Wagner for decedent's divorce from his first wife, and Copperwheat advised that another 'paid in good faith' letter be drafted including this fact." (Last two (2) sentences in pages 11 going to 12 of the Report and Recommendation).

D. Breach of Fiduciary Duties

With all due respect to the Magistrate Judge, Plaintiff maintains that under the factual circumstances of this case, Plaintiff is entitled to damages.  There is not dispute that in this case, as previously discussed, Defendant MetLife and UAL dealt with Mrs. Wagner in bad faith as, after realizing that it failed to follow its own claim procedures and imprudently paid the life insurance benefits to the wrong parties based on an unsubstantiated, unreliable, self-serving and fraudulent affidavit, MetLife intentionally and deliberately tried, but failed, to cover up its mistakes, and in the process, committed more mistakes, to the damage and prejudice of the Plaintiff.

Accordingly, Mrs. Wagner is entitled to monetary damages.

E. Attorney's fees

A fiduciary who breaches his duties under ERISA is personally liable for, and must make good to the plan, any loss incurred by reason of such breach [ERISA §409(a)]. Likewise, a fiduciary is also liable for interest, attorney's fees and cost of suit [ERISA  §502 (g)(1)] and appropriate equitable relief such as the value of a benefit the participant would have received absent the alleged breached of fiduciary duty [Strom v. Goldman Sachs & Co., 202 F. 3d 138 (2d Cir. 1999)].

In this case, Plaintiff was forced to litigate to protect her rights as the legitimate and rightful beneficiary who is entitled to the life insurance benefits of her late husband under the Plan,

CONCLUSION

In light of the foregoing, Plaintiff, Mrs. Wagner, most respectfully requests that this Honorable Court reject the Report and Recommendation of the Magistrate Judge, grant her motion for summary judgment, deny Defendants' motion for summary judgment, together with such and further remedies as this Court deem just and proper under the premises.

Dated: March 11, 2011
Elmhurst, New York

_____/S/_____
**BENJY  M. CORPUZ (BC-2223)**
CORPUZ AND ASSOCIATES, P.C.
Counsel for Plaintiff SONIA I. WAGNER
40-35 Hampton St., Unit 2F
 Elmhurst, New York 11373
(646) 431-5140/(212-695-5281/82
Fax No. (212) 563-2664
 E-mail Address: attybmc@yahoo.com
 Bar I.D. No. BC-2223

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the attached **PLAINTIFF'S WRITTEN OBJECTION TO MAGISTRATE PITMAN'S REPORT AND RECOMMENDATION** was served via regular Electronic Case Filing (ECF) on August 13, 2010, upon:

    MICHAEL H. BERNSTEIN, ESQ.
    JOHN T. SEYBERT, ESQ.
    SEDGWICK, DETERT, MORAN & ARNOLD, LLP
    Attorneys for Defendant
    METROPOLITAN LIFE INSURTANCE COMPANY
    AND UNITED AIR LINES, INC.
    125 Broad Street, 39th Floor
    New York, New York 10004
    Tel. No. (212) 244-0202
    Fax No. (212) 422-0925
    [SDMA File #0584-007580]


Dated:  March 11, 2011
    Queens, New York


               _____/S/_____
                     BENJY M. CORPUZ (BC2223)