UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SONIA I. WAGNER, Surviving Spouse, herein
represented by CORPUZ AND ASSOCIATES, P.C., as          Civ. Act. No.: 08 CV 11284 (GBD)
Attorney-in-Fact,

                                        Plaintiff,      DOCUMENT
                                                        ELECTRONICALLY FILED

                    -against-

METROPOLITAN LIFE INSURANCE COMPANY,
UNITED AIR LINES, INC., EDWARD WAGNER
AND ELIZABETH WAGNER,

                                        Defendants.
-------------------------------------------------------------------X

═══════════════════════════════════════════════════════════════

**METROPOLITAN LIFE INSURANCE COMPANY AND UNITED AIR LINES, INC.'S
MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

═══════════════════════════════════════════════════════════════

SEDGWICK LLP
*Attorneys for Defendants*
METROPOLITAN LIFE INSURANCE COMPANY
and UNITED AIR LINES, INC.
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925

Michael H. Bernstein
John T. Seybert
    *Of counsel*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

    A.  PERTINENT TERMS OF THE PLAN. ..........................................................................3

    B.  THE WAGNER CHILDREN FILE A CLAIM FOR PLAN BENEFITS. ............................4

    C.  SONIA WAGNER'S UNTIMELY CLAIM FOR PLAN BENEFITS. ................................6

STANDARD OF REVIEW FOR REPORT .............................................................................9

ARGUMENT..............................................................................................................................9

POINT I

    THE REPORT PROPERLY FINDS THAT DEFENDANTS ARE ENTITLED TO
    SUMMARY JUDGMENT BECAUSE METLIFE'S DETERMINATION TO PAY
    THE PLAN BENEFITS TO THE WAGNER CHILDREN WAS MADE IN
    GOOD FAITH AND WAS NOT ARBITRARY AND CAPRICIOUS ...................................9

    A.  THE COURT MUST REVIEW METLIFE'S DECISION-MAKING  UNDER
        THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW. ................................9

    B.  THE MAGISTRATE JUDGE'S REPORT CORRECTLY FOUND THAT
        METLIFE'S DECISION TO PAY THE PLAN BENEFITS TO THE WAGNER
        CHILDREN WAS BASED ON SUBSTANTIAL EVIDENCE. ...........................................10

    C.  PLAINTIFF'S ARGUMENTS CHALLENGING METLIFE'S
        DETERMINATION TO APPROVE PAYMENT OF PLAN BENEFITS
        TO THE WAGNER CHILDREN ARE INCORRECT. .......................................................11

        1.  PLAINTIFF'S ARGUMENT THAT METLIFE FAILED TO FOLLOW
            CLAIMS PROCEDURES IS FUNDAMENTALLY FLAWED
            BECAUSE IT IS BASED ON A MISINTERPRETATION OF A
            CLAIM FORM OF UNKNOWN ORIGIN. ...................................................................11

        2.  PLAINTIFF'S ARGUMENT THAT METLIFE SENT CLAIM FORMS
            TO THE WAGNER CHILDREN BEFORE IT HAD NOTICE OF
            THE DEATH OF THE DECEDENT IS ILLOGICAL AND ABSURD....................13

3.  PLAINTIFF'S ARGUMENT THAT METLIFE WAS NOT
    AUTHORIZED TO COMMUNICATE DIRECTLY WITH
    THE WAGNER CHILDREN IS MERITLESS. ................................................. 15

4.  PLAINTIFF'S ASSERTION THAT DONNA WHEAT IS A METLIFE
    EMPLOYEE IS INCORRECT AND IMMATERIAL. ..................................... 16

POINT II

THE REPORT CORRECTLY RECOMMENDS THAT SUMMARY
JUDGMENT BE GRANTED DISMISSING PLAINTIFF'S BREACH
OF ERISA FIDUCIARY CAUSES OF ACTION ........................................................ 17

POINT III

THE REPORT CORRECTLY RECOMMENDS THAT SUMMARY
JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFF'S
FOURTH CAUSE OF ACTION FOR ATTORNEY'S FEES ..................................... 17

CONCLUSION ................................................................................................................. 18

CERTIFICATE OF SERVICE ....................................................................................... 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alessi* v. *Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981) ............................................................................................................17

*Conkright* v. *Frommert*,
130 S.Ct. 1640 (2010) .................................................................................................... 10, 11

*Crosby* v. *Crosby*,
986 F.2d 79 (4th Cir. 1993) ..............................................................................................12

*Egelhoff* v. *Egelhoff*,
532 U.S. 141 (2001) ............................................................................................................17

*Firestone Tire and Rubber Co.* v. *Bruch*,
489 U.S. 101 (1989) ............................................................................................................10

*Hardt* v. *Reliance Standard Life Ins. Co.*,
130 S.Ct. 2149 (2010) .................................................................................................... 3, 19

*Heidgerd* v. *Olin Corp.*,
906 F.2d 903 (2d Cir. 1990) ..............................................................................................14

*Hobson* v. *Metropolitan Life Ins. Co.*,
574 F.3d 75 (2d Cir. 2009) ........................................................................................... 10, 11

*Hughes Aircraft Co.* v. *Jacobson*,
525 U.S. 432 (1999) ............................................................................................................17

*Ingersoll-Rand Co.* v. *McClendon*,
498 U.S. 133 (1990) ............................................................................................................18

*Kennedy* v. *Plan Adm'r For DuPont Sav. & Inv. Plan*,
129 S.Ct. 865 (2009) ..........................................................................................................14

*Lockheed Corp.* v. *Spink*,
517 U.S. 882 (1996) ............................................................................................................17

*Metropolitan Life Ins. Co.* v. *Glenn* ("*Glenn*"),
554 U.S. 105, 128 S.Ct. 2343 (2008) ...............................................................................10

*Pagan* v. *NYNEX Pension Plan*,
52 F.3d 438 (2d Cir. 1995). ...............................................................................................11

*Pompano* v. *Michael Schiavone & Sons, Inc.*,
  680 F.2d 911 (2d Cir. 1982) ................................................................................14

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA"),
  29 U.S.C. §1001, *et seq.* ........................................................................................1

ERISA §502(a)(3),29 U.S.C. §1132(a)(3) ........................................................ 2, 17

FED. R. CIV. P. 72(b)..................................................................................................9

## PRELIMINARY STATEMENT

Defendants, Metropolitan Life Insurance Company ("MetLife") and United Air Lines, Inc. ("UAL"), respectfully submit this Memorandum of Law in Response to Plaintiff's Amended Written Objection To Magistrate Pitman's Report and Recommendation dated March 14, 2011, (Doc. No. 71.), which recommended that the district court grant the Defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

In this action, plaintiff Sonia Wagner ("Plaintiff") seeks to recover benefits under the United Airlines Employee Welfare Benefit Plan (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq.* Before his death, Edward D. Wagner ("Decedent") was a UAL employee, who was a participant in the Plan, including the life insurance coverage available under the Plan. MetLife issued group insurance policies to fund life insurance benefits payable under the Plan and also administered claims for those benefits under a full grant of discretionary authority to both interpret the Plan's terms and determine eligibility for benefits under the Plan.

Decedent died on December 5, 2005 without having filed a beneficiary designation form for life insurance benefits under the Plan. Accordingly, Decedent's adult children, Elizabeth and Edward Wagner, Jr. the (the "Wagner Children") filed a claim for benefits with MetLife in which they represented that Decedent was divorced from their mother and that they were therefore the proper beneficiaries under the Plan. No competing claim for these benefits was filed at that time. There was also no evidence in the administrative claim file that was inconsistent with the information provided by the Wagner Children at the time MetLife made its determination. Accordingly, MetLife paid the benefits to the Wagner Children in good faith. More than a year after the benefits were paid, however, Plaintiff filed a claim for the Plan benefits claiming that she was entitled to receive them as the Decedent's wife. MetLife denied Plaintiff's claim because the Plan

1

benefits had already been paid to the Wagner Children in good faith.

U.S. Magistrate Judge Pitman issued his Report and Recommendation dated February 28, 2011 (the "Report") recommending that summary judgment be granted to MetLife and UAL and against Plaintiff.  In his Report, Magistrate Judge Pitman found that, at the time MetLife reached its determination to pay benefits to the Wagner Children, there was no information in the administrative claim file to suggest that Decedent was married at the time of his death.  Magistrate Judge Pitman also concluded that it was not arbitrary and capricious for MetLife to deny Plaintiff's claim for Plan benefits when they had already been paid in good faith.  Magistrate Judge Pitman also recommended dismissing Plaintiff's claim for breach of ERISA fiduciary duty under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) because the relief sought is not equitable relief and that Plaintiff's claim for attorney's fees also be dismissed because she has not achieved any success on the merits.

Plaintiff filed her objections consisting of trivial inconsistencies she alleges exist in the claims process for her claim, which are actually based on her own misunderstanding of the claim procedure applicable to her claim.  None of Plaintiff's objections however, are material and none provide a basis for this Court to reject the Report.  Furthermore, Plaintiff's objection to Magistrate Judge Pitman's recommendation that her claim for breach of fiduciary duty under ERISA §502(a)(3), be dismissed is meritless on its face, since she admittedly seeks "monetary damages" under this section, which only entitles plaintiffs to "other appropriate equitable relief."  Lastly, Plaintiff claims that, notwithstanding her lack of any success on the merits, she is entitled to attorney's fees under ERISA §502(g)(1), 29 U.S.C. §1132(g)(1) because she was "forced to litigate her rights."  But since she had no success on the merits, Plaintiff is undeniably not entitled to an award of attorney's fees under the Supreme Court's recent ruling in *Hardt* v. *Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010), which was cited by Magistrate Judge Pitman in his Report.

For the foregoing reasons, and as set forth more fully below, this Court should adopt the

Report and grant summary judgment dismissing Plaintiff's Amended Complaint against both Defendants in its entirety.

## STATEMENT OF FACTS

Decedent was employed by UAL between December 21, 1969 and December 5, 2005. (248).[1] As a result of his employment with UAL, Decedent was enrolled in the Plan. (090).

## A.    PERTINENT TERMS OF THE PLAN.

As of January 1, 2004, MetLife issued to UAL group policies of insurance (Policy Nos. 27747-1-G and 27727-1-G) to fund group life insurance benefits payable under the Plan. (003, 047, 100). The Plan's Summary Plan Description ("SPD") provides:

> If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be divided and paid in equal shares to each member of the first class in the order listed below in which there is a person who is related to you and who survives you:
>
> 1. your Spouse/Qualified Domestic Partner;
>
> 2. your child(ren);
>
> 3. your parent(s);
>
> 4. your sibling(s).
>
> However, the insurance company may instead pay all or part of that amount to your estate.
>
> Any payment will discharge the insurance company's liability for the amount so paid.

(038-39, 102).

The SPD also provides:

### Life Benefits Claims

* * *

Life Claim Submission

---

[1] The numbers in parentheses refer to the last three digits of the Bates Stamped documents annexed to the Declaration of Andrea Espinosa dated July 8, 2010 ("Espinosa Declaration") (Doc. No. 45), which begin with the prefix "WAGNER 000__."

> In submitting claim(s) for Life benefits ("Benefits"), the claimant must complete the appropriate Life claim form and submit the required proof as described in the certificate. This includes an original certified death certificate which includes the cause of death.
>
> Life Claim form(s) must be submitted in accordance with the instructions on the MetLife claim form.

(042).

## B.    THE WAGNER CHILDREN FILE A CLAIM FOR PLAN BENEFITS.

On December 5, 2005, Decedent died of Hypertrophic Myocarditis in Fortaleza, Brazil. (263). Decedent had not submitted a beneficiary designation form to UAL or MetLife concerning Plan life insurance benefits (the "Plan Benefits"), and MetLife had no record of such a form being on file at the time of his death. (258). According to the Plan, when no beneficiary designation form is on file, benefits are payable to the decedent's spouse, and if there is no spouse, then to his children. (102).

On December 12, 2005, Elizabeth Wagner, Decedent's daughter, first advised UAL of her father's death. (258). Laurie Fahrenkrog, on behalf of UAL, completed a Non-Retiree Death Notification Form and sent it to MetLife. (258). The form included a handwritten notation that "no bene[ficiary was] on file." (258).

By letter dated December 22, 2005, MetLife provided the Wagner Children with a "beneficiary death packet," which included an Affidavit for Claim Consideration Form, Claimant's Statement/TCA Form and a return envelope. (253, 251-52). The same mailing address was provided for both Edward Wagner, Jr. and Elizabeth Wagner. (253, 258).

On December 29, 2005, MetLife received the hard copy of the completed "Life Insurance Claim Form Employer's Statement," which calculated Decedent's life insurance benefits payable under the Plan. (248-49). The completed Employer's Statement was signed by Donna L. Wheat, UAL's authorized representative. (245). The Statement does not identify any beneficiaries entitled to

receive the Plan Benefits.  (245-46).

On January 9, 2006, MetLife received a Claimant's Statement dated January 5, 2006 from Elizabeth Wagner.  (245-46).  On her Claimant's Statement, Elizabeth Wagner certified that Decedent's marital status at the time of his death was "divorced."  (245).  On January 9, 2006, MetLife received a Claimant's Statement dated January 5, 2006 from Edward Wagner, Jr.  (243-44). On his Claimant's Statement, Edward Wagner, Jr. also certified that Decedent's marital status at the time of his death was "divorced."  (243).

On January 9, 2006, MetLife received a Claimant's Affidavit sworn to by Edward Wagner, Jr. on January 5, 2006.  (0260-62).  This Claimant's Affidavit identified "Susan Wagner" as Decedent's only spouse and stated that they had been divorced on November 27, 2002.  (260).  Edward Wagner, Jr. did not identify Plaintiff as Decedent's spouse on his Claimant's Affidavit. (260-62).

On January 9, 2006, MetLife received a certified copy of a "Report of Death of an American Citizen Abroad" ("Report of Death"), concerning Decedent.  (0263-64).  This Report of Death stated that Decedent's remains were "airshipped to Orland Park, Il" and that the effects were "in possession of family."  (263).  The Report of Death also stated that a copy of the report was sent to "Elizabeth Wagner" and "Susan Wagner."  (263).  The Report of Death did not identify Plaintiff as Decedent's spouse or otherwise indicate that she had any relationship to Decedent.  (263).

On January 13, 2006, Julie Mosicki of MetLife reviewed the claim information submitted by the Wagner Children, including the Claimants' Statements, the Death Certificate, Edward Wagner's Claimant's Affidavit, and the Report of Death, and approved their claim for the Plan Benefits. (162).  On January 13, 2006, Ms. Mosicki forwarded her approval of the claims for counter-signing by Heidi Klockowski, who agreed with this determination.  (161).  Thus, on January 13, 2006, MetLife approved the unchallenged claim (242) and paid all Plan Benefits in equal shares to the Wagner Children.  (160).

C.     **SONIA WAGNER'S UNTIMELY CLAIM FOR PLAN BENEFITS.**

On April 30, 2007, more than a year after MetLife paid all Plan Benefits to the Wagner Children, UAL received a letter from Plaintiff inquiring about a "death benefit for her late husband, who passed away on December 5[,] 2005." (269). Plaintiff's April 30, 2007 letter enclosed a copy of a "Certificate of Marriage" from the Republic of the Philippines, Office of the Civil Registrar General, indicating that Decedent and Plaintiff had been married on February 4, 2002. (271). MetLife received the letter and enclosures on May 7, 2007. (268-69).

On May 18, 2007, Cheri Ciacciarelli-Natale of MetLife reviewed Plaintiff's April 30, 2007 letter and the records in the file and recommended that Plaintiff be advised that the Plan Benefits had already been paid in good faith to the Wagner Children. (157, 268). On May 31, 2007, Tim Copperwheat at MetLife approved Ms. Ciacciarelli-Natale's recommendation. (157, 267). Accordingly, by letter dated June 6, 2007, MetLife advised Plaintiff that it had paid the Plan Benefits to the Wagner Children based on the Claimant's Affidavit, which did not indicate that Decedent was married to Plaintiff at the time of his death. (266-67).

On July 31, 2007, MetLife received a letter from Plaintiff stating that she provided UAL and MetLife "with a copy of [the] Marriage Certificate, as soon as [she] became aware of the death of [her] late husband who passed away on December 5, 2005." (276). Plaintiff's letter did not explain why she did not know about Decedent's death until almost a year and a half after it had occurred. (276). Plaintiff also asserted in her letter that Elizabeth Wagner "wrongfully submitted" a death benefit claim form misrepresenting Decedent's marital status and claiming that Elizabeth Wagner had actually attended Decedent and Plaintiff's the wedding in Manila in 2002. (276). Enclosed with Plaintiff's letter was a copy of an "Affidavit in Lieu Of Certificate Of Legal Capacity To Contract Marriage For American Citizens," which purports to have been signed by Decedent on January 31, 2002. (270).

6

On August 10, 2007, Ms. Ciacciarelli-Natale reviewed Plaintiff's letter, along with all of the records in the claim file, including MetLife's letter dated June 6, 2007 and advised her supervisor of the situation.  (275).  On August 16, 2007, Mr. Copperwheat requested that a new letter to Plaintiff be prepared explaining the reasons MetLife paid the Plan Benefits to the Wagner Children in good faith, and noting that the marriage certificate Plaintiff submitted indicates that she and Decedent were married on February 4, 2002, which was prior to the date Decedent was divorced from his first wife, Susan Wagner, on November 27, 2002.  (154, 275).

By letter dated September 20, 2007, MetLife again advised Plaintiff that it had paid the Plan Benefits to the Wagner Children in good faith.  (273-74).  In that letter, MetLife also advised Plaintiff that there was no beneficiary designation form on file, that the Claimant's Affidavit submitted by Edward Wagner, Jr. did not indicate that there was any surviving spouse at the time of Decedent's death, and that based on these submissions, the Plan Benefits had been paid in "good faith and [MetLife's] liability has been fully satisfied."  (176-77).

By letter dated October 25, 2007, Plaintiff requested a copy of the Claimant's Affidavit.  (285).  On November 19, 2007, Benjy Corpuz, Esq. advised Linda Desmarais at MetLife that he had been retained by Plaintiff to represent her interests in connection with her claim for Plan Benefits.  (153).  By letter dated November 29, 2007, MetLife provided Plaintiff with a copy of the Claimant's Affidavit.  (284).

On March 3, 2008, Attorney Corpuz requested a claim form from MetLife, and Ms. Ciacciarelli-Natale advised that she could not provide the form because the claim had already been paid and the file had been closed.  (149).  By letter dated June 4, 2008, Attorney Corpuz requested that MetLife pay the Plan Benefits to Plaintiff and enclosed several documents in support of her claim for those benefits.  (194-212).

On June 16, 2008, Linda Desmaris at MetLife reviewed the June 4, 2008 letter and the facts

asserted therein, questioned "if the marriage is legal," and recommended that a letter be sent advising Attorney Corpuz that the claim had previously been paid in good faith. (215-16, 146).  On July 2, 2008, Andrea Espinosa at MetLife approved of sending a letter to Attorney Corpuz stating that the Plan Benefits had already been paid in good faith.  (216, 135).

On June 30, 2008, MetLife received another copy of Attorney Corpuz's letter dated June 4, 2008.  (145).  By letter dated August 4, 2008, MetLife responded to Attorney Corpuz's letter, and advised that it had re-examined the entire claim file, noted that the Claimant's Affidavit did not indicate that Decedent was married at the time of death, further noted that MetLife had paid the "claim in good faith according to the information on file at the time of payment," and advised that the Plan was governed by ERISA. (213-14).  By letter dated September 29, 2008, Attorney Corpuz challenged MetLife's decision to pay the Plan Benefits to the Wagner Children instead of to Plaintiff. (217-23).

On October 28, 2008, MetLife considered Attorney Corpuz's arguments and decided to request additional proof from Edward Wagner, Jr. concerning Decedent's divorce from his former spouse, Susan Wagner.  (224-25).  By letter dated November 14, 2008 to Edward Wagner, Jr., MetLife requested that he provide a copy of the divorce decree or legal document confirming the divorce of Decedent and Susan Wagner.[2]  (226).   This letter was subsequently returned by the post office and MetLife never received any response to its inquiry.  (227-29).

By letter dated December 11, 2008, Attorney Corpuz advised MetLife that Plaintiff had commenced an action in the Supreme Court of the State of New York, County of New York, seeking the Plan Benefits paid by MetLife to the Wagner Children, and enclosed a courtesy copy of the Summons and Complaint.  (230-41).  The matter was subsequently removed to this court on the basis of federal question jurisdiction (Doc. No. 1).

---

[2] Notably, although Susan Wagner was advised of the death of Decedent, she did not file a claim for life benefits.  (263).

## STANDARD OF REVIEW FOR REPORT

FED. R. CIV. P. 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court shall make a *de novo* determination of any portion of the magistrate judge's disposition to which specific written objection has been made. FED. R. CIV. P. 72(b) ("The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.").

## ARGUMENT

## POINT I

## THE REPORT PROPERLY FINDS THAT DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE METLIFE'S DETERMINATION TO PAY THE PLAN BENEFITS TO THE WAGNER CHILDREN WAS MADE IN GOOD FAITH AND WAS NOT ARBITRARY AND CAPRICIOUS

**A. THE COURT MUST REVIEW METLIFE'S DECISION-MAKING UNDER THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW.**

The Supreme Court has held that "a denial of benefits challenged under [ERISA] must be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989); *Metropolitan Life Ins. Co.* v. *Glenn* ("*Glenn*"), 554 U.S. 105, 128 S.Ct. 2343, 2347-48 (2008); *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). When a claim administrator is given discretionary authority to determine a claimant's eligibility for benefits, however, the court shall view its decision with a strong measure of deference and may only reverse the administrator's actions if the court finds them to be arbitrary and capricious. *See Conkright* v. *Frommert*, 130 S.Ct. 1640, 1646 (2010); *Hobson*, 574 F.3d at 82-83; *see*

*also Pagan* v. *NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995).

Here, Plaintiff does not object to the Magistrate Judge Pitman's finding that the Plan vested MetLife with discretionary authority and that the Court's review is to be done pursuant to the arbitrary and capricious standard. (Report, p. 29). Rather, Plaintiff objects to Magistrate Judge Pitman's finding that MetLife's determination to pay the Plan Benefits to the Wagner Children in accord with the terms of the Plan was arbitrary and capricious because MetLife purportedly did not follow the terms of the Plan in processing the claim. Plaintiff's contentions, however, are baseless.

**B. THE MAGISTRATE JUDGE'S REPORT CORRECTLY FOUND THAT METLIFE'S DECISION TO PAY THE PLAN BENEFITS TO THE WAGNER CHILDREN WAS BASED ON SUBSTANTIAL EVIDENCE.**

Magistrate Judge Pitman correctly found that the Court may review and consider only the documents before MetLife when it rendered its determination to pay benefits on January 13, 2006. (Rep., p. 39). Plaintiff does not object to this ruling.

The documents in the administrative claim file in MetLife's possession at that time it rendered its determination to pay Plan Benefits to the Wagner Children establish the following: On December 5, 2005, Decedent died in Foraleza, Brazil. (263). As a result, Plan Benefits were due and payable in the amount of $86,000. Since Decedent did not file a beneficiary designation form expressly identifying the beneficiaries, the Plan Benefits were paid according to the Plan's facility-of-payment provision. (160). Specifically, the Plan requires that life insurance benefits be paid to the spouse of the decedent, and if there is none, then to the decedent's children. (038-39, 102).

There was no information in the administrative record at the time MetLife approved the Wagner Children's claims to suggest that Decedent was married at the time of his death. On December 12, 2005, the Wagner Children, Elizabeth and Edward Wagner, Jr., notified UAL of Decedent's death and promptly submitted the claim forms needed to process payment of the Plan Benefits. (243-46, 248-49, 260-61). The claim forms and the Report of Death from the Brazilian

10

government did not indicate that Decedent was married.  (*Id.*).  Indeed, Edward Wagner, Jr. submitted an affidavit attesting under penalty of perjury that Decedent was not married at the time of his death.  (260-62).  On January 13, 2006, based on the information in its file, MetLife paid the Plan Benefits in equal shares to the Wagner Children.  (160).

Since there was no information in the administrative claim file on January 13, 2006 indicating that Decedent was married at the time and the Wagner Children submitted proof that he was not married at the time of his death, MetLife's determination that the Plan Benefits should be paid to the Wagner Children was made in good faith and was not arbitrary and capricious.  Magistrate Judge Pitman's Report correctly notes that MetLife's payment in good faith discharged any further liability for these benefits under the Plan.  (Rep., p. 37).  *See Crosby* v. *Crosby*, 986 F.2d 79, 84 (4th Cir. 1993) (ruling that "insurer discharges its liability under an insurance policy by making good faith payments to a purported beneficiary without notice of any competing claims.").

## C.  PLAINTIFF'S ARGUMENTS CHALLENGING METLIFE'S DETERMINATION TO APPROVE PAYMENT OF PLAN BENEFITS TO THE WAGNER CHILDREN ARE INCORRECT.

### 1.  Plaintiff's Argument That MetLife Failed To Follow Claims Procedures Is Fundamentally Flawed Because It Is Based On A Misinterpretation of A Claim Form Of Unknown Origin.

Plaintiff contends that MetLife was required to follow the procedures set forth in Plan, which Plaintiff misconstrues as requiring the employer (i.e. UAL), to complete a form and send it to the beneficiaries for completion.  (Plt. Obj., p. 2).[3]  This is manifestly not what the Plan requires. The SPD states:

> FILING CLAIMS.  To obtain your Welfare Plan benefits, you may have to file a claim. Each benefits section of this SPD has information on the filing of claims for specific benefits.  See your Claims Administrator, insurance company or HMO/DHMO to obtain the proper claim forms or for any additional information you may need.

---

[3] "Plt. Obj." refers to Amended Plaintiff's Written Objection To Magistrate Pitman's Report And Recommendation dated March 14, 2011, Doc. No. 71.

(093).  In the section regarding the claim procedure for Plan life insurance benefits, the SPD states:

> **FILING A CLAIM FOR BENEFITS.**   A claim for loss of life must be filed by contacting the United Benefit Service Center (UBSC) at 1-888-825-0188.  The UBSC will provide MetLife with the necessary information to initiate the claim process.

(105).  In addition, the Certificate of Insurance states:

> **Life Benefit Claims**
>
> In submitting claim(s) for Life benefits ("Benefits"), the claimant must complete the appropriate Life claim form and submit the required proof as described in the certificate.  This includes an original certified death certificate which includes the cause of death.
>
> Life Claim form(s) must be submitted in accordance with the instructions on the MetLife claim form.

(042).  These governing plan documents establish that the claim process is initiated by the claimant who must call the UBSC, which in turn provides all claim information to MetLife.  At that point, MetLife will send out the claim forms to the beneficiaries.

Plaintiff argues that UAL was supposed to send the claim forms to the beneficiaries.  But this assertion is based on her misinterpretation of the instructions contained on a life insurance claim form that she obtained from an unknown source and subsequently submitted to MetLife. (0218-22).  While it is unknown where Plaintiff obtained the form, it is clearly not the claim form for the UAL Plan.  In fact, the claim form and instructions referenced by Plaintiff state "SBC Life Claims." (0220-21).  Notably, the Employer's Statement completed and submitted by UAL concerning this claim does not reference "SBC Life Claims."  (0247-48).  It therefore appears that the Employer's Statement and instructions that Plaintiff argues set forth MetLife's obligations in processing Plan life benefit claims relate to another Plan — not the UAL Plan.  Therefore, the "SBC Life Claims" form and instructions on that form have nothing to do with the claims procedure established by the UAL Plan.

Plaintiff's arguments are fundamentally flawed because they are based on this "SBC Life

Claims" form that is not a governing plan document, and Magistrate Judge Pitman's Report correctly concluded that the relevant claim procedures are set forth in the UAL SPD.  (Report, p. 32). *See Kennedy* v. *Plan Adm'r For DuPont Sav. & Inv. Plan*, 129 S.Ct. 865, 877 (2009) (reviewing the SPD and noting that it is one of the "governing plan documents"); *Heidgerd* v. *Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990) (ERISA contemplates that the SPD will "be an employee's primary source of information regarding employment benefits."); *Pompano* v. *Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 914 (2d Cir. 1982) (reviewing SPD to determine whether the committee properly denied accelerated pension benefit).  Thus, Plaintiff's attempts to create inconsistencies in the claim process for the UAL Plan by relying on a claim form that has nothing to do with the UAL Plan should be rejected by this Court.

2. **Plaintiff's Argument That MetLife Sent Claim Forms To The Wagner Children Before It Had Notice Of The Death Of The Decedent Is Illogical And Absurd.**

Plaintiff argues that MetLife must have made a mistake in claims processing and payment of Plan Benefits to the Wagner Children because MetLife sent them death benefit claim forms before it had received the UAL Employer's Statement.  (Plt. Obj., p. 3).  Specifically, Plaintiff asserts that MetLife sent the death benefit claim packet to the Wagner Children on December 22, 2005, which was before it had received the necessary information from UAL to process the claim.  That information was received by MetLife a week later on December 29, 2005.  (*Id.*).  Obviously, Plaintiff's conclusion is incorrect because it would be illogical for MetLife to send claim forms to beneficiaries for a death benefit concerning participants' death that it was not even aware of at the time.  Contrary to Plaintiff's convoluted and completely erroneous contentions, the Non-Retiree Death Notification Form completed by United was faxed to MetLife on December 12, 2005. (0258).

Not only is Plaintiff's argument wrong, it is also probative of nothing because on January 13,

2006, at the time that MetLife determined that the Wagner Children were the proper beneficiaries, it

had all of the information it needed to decide the claim.  As U.S. Magistrate Judge Pitman found:

> Because Edward D. Wagner died without naming a Life Benefits beneficiary,
> MetLife could disburse benefits to surviving children provided that there was no
> surviving spouse. At the time of disbursement, MetLife possessed: (1) a Non-Retiree
> Death Notification Form completed by United following Elizabeth Wagner's
> telephone call, noting "no bene[ficiary] on file"; (2) a completed Employer's
> Statement calculating Life Benefits; (3) a certified copy of the Report of Death of an
> American Citizen Abroad listing the cause of death and noting that decedent's
> remains were shipped to the same town in which Edward D. Wagner's children
> resided; (4) a Claimant's Affidavit from Edward Wagner indicating that decedent was
> divorced from Susan Wagner on November 27, 2002, with no mention of plaintiff,
> and (5) Claimant's Statements from Edward Wagner and Elizabeth Wagner certifying
> that decedent was divorced.

(Report, pp. 30-31).  Plaintiff does not identify any information in those documents that would have

indicated (or even raised a question) to MetLife that the Decedent may have a wife in the Philippines

who had not filed a claim for Plan Benefits.  Indeed, Magistrate Judge Pitman correctly found that

because "MetLife had no notice of a competing claim at the time" it decided to pay the Wagner

Children.  (Report, p. 31).

    Plaintiff argues that MetLife should have requested additional proof from the Wagner

Children before paying the Plan Benefits to them.  (Plt. Obj., p. 6).  But Plaintiff's argument is

premised on a misassumption that MetLife actually knew of Plaintiff and her claim at the time it

paid these benefits, which is incorrect.  Therefore, MetLife had no reason to search for additional

information, at the time it made its good faith payment to the Wagner Children.

    Furthermore, the information Plaintiff asserts would have been probative of the existence of

her claim for benefits in January 2006 is insufficient on its face to establish the legitimacy of this

claim.  First, Plaintiff claims that MetLife should have obtained a copy of the divorce decree of the

Decedent and his ex-wife.  But MetLife was in possession of a sworn affidavit stating that the

Decedent was divorced. (260-61).  Moreover, the Decedent's ex-wife has not made a claim for life

benefits.  (0263).  Accordingly, the divorce decree would have provided no additional information.

Next, Plaintiff argues that MetLife should have asked if Decedent "remarried." (Plt. Obj., p. 6).   But Plaintiff fails to demonstrate how that question would result in a different response than the question on MetLife's claim form, which asked "[h]ow many times was the insured married?" (260). Indeed, Plaintiff does not explain how the question would have resulted in a different response from Edward Wagner, Jr., which was that his father was only married "once." (260).   Therefore, Plaintiff's attempts to demonstrate MetLife's purported failure to provide a full and fair review should be rejected.

### 3.   Plaintiff's Argument That MetLife Was Not Authorized To Communicate Directly With The Wagner Children Is Meritless.

Plaintiff argues that UAL should have been the sole entity dealing directly with the beneficiaries because "it is the employer UAL, more than any other entity, which would or should know potential beneficiaries of a deceased employee." (Plt. Obj., p. 4).   But this is not an obligation that UAL assumed when it designed the Plan.   Indeed, the UAL Plan documents vested MetLife with full discretionary authority to make determinations concerning the eligible beneficiaries of Plan benefits and to interpret Plan terms.   (0093).   It is also well-settled that a plan sponsor, such as UAL, has discretion to establish the Plan structure, available benefits and procedures for obtaining benefits under its Plan.   *See Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432, 444 (1999); *Lockheed Corp.* v. *Spink*, 517 U.S. 882, 893 (1996); *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981).   Here, the UAL Plan documents establish that UAL did not assume any burden to investigate claims for benefits.   In fact, contrary to Plaintiff's incorrect assertions, the Plan documents unambiguously state that "[a]fter MetLife receives your claim for Benefits, MetLife will review your claim and notify you of its decision to approve, request additional information or deny your claim." (042).   Thus, contrary to Plaintiff's erroneous contentions, MetLife was the properly designated claims administrator for the Plan Benefits and had sole authority to determine the proper beneficiaries for Decedent's Plan Benefits.

In *Egelhoff* v. *Egelhoff*, 532 U.S. 141, 149-50 (2001), the U.S. Supreme Court rejected a similar attempt to place undue burdens of investigation on an ERISA claim administrators.  In *Egelhoff*, a Washington state statute revoked a written beneficiary designation of a spouse upon divorce. Respondents argued that the ERISA administrator was required to determine that the beneficiary was divorced, that the written designation was null as a function of state law, and to pay the group life benefits to the children in accord with Washington State law.  The Supreme Court disagreed, and held that ERISA claim administrators should not be saddled with such responsibilities, stating:

> [I]f administrators do pay benefits, they will face the risk that a court might later find that they had "actual knowledge" of a divorce. If they instead decide to await the results of litigation before paying benefits, they will simply transfer to the beneficiaries the costs of delay and uncertainty.  Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of "minimiz[ing] the administrative and financial burden[s]" on plan administrators-burdens ultimately borne by the beneficiaries.

*Id.* at 149-50. (quoting *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 142 (1990)).

### 4.  Plaintiff's Assertion That Donna Wheat is a MetLife Employee is Incorrect And Immaterial.

Plaintiff also argues that Magistrate Judge Pitman's Report is incorrect because he failed to consider that Donna L. Wheat is an employee of MetLife, who prepared the UAL Employer's Statement, and also that she was responsible for sending the death benefit packet to the Wagner's children.  (Plt. Obj., p. 5).  Initially, both Defendants identified Ms. Wheat as UAL's authorized representative, not a MetLife employee, in their motion papers.  Thus, Plaintiff's assertion that the Defendants agreed that Ms. Wheat is a MetLife employee is in error.  (MOL, Doc. No. 43, p. 5). More importantly, Plaintiff's argument concerning Ms. Wheat's involvement is immaterial because she fails to explain the significance of whether a UAL employee or a MetLife employee completed the Employer's Statement for the Wagner Children's claim.  Plaintiff concedes that the Decedent did not submit a beneficiary designation form identifying her as the beneficiary.  (Amd. Compl., ¶16). The Employer's Statement does not identify any potential beneficiaries.  (247).  It only identifies the

16

date of Decedent's death, the amount of benefits to be paid, and other pertinent information regarding the Decedent's employment background. (0247-48). Thus, the information contained on the form does not include any information pertinent to Plaintiff's claim for benefits, regardless of whether it was completed by a UAL or a MetLife employee.

For the foregoing reasons, this Court should overrule the Plaintiff's objections and adopt the Report in its entirety.

## POINT II

### THE REPORT CORRECTLY RECOMMENDS THAT SUMMARY JUDGMENT BE GRANTED DISMISSING PLAINTIFF'S BREACH OF ERISA FIDUCIARY CAUSES OF ACTION

Plaintiff's Second and Third Causes of Action against MetLife and First Cause of Action against UAL allege that the Defendants breached ERISA fiduciary duties in the administration of Plaintiff's claim for Plan benefits. In his Report, Magistrate Judge Pitman reviewed the controlling law on point from the U.S. Supreme Court and Second Circuit, which uniformly holds that "money damages" are not available under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). (Rep., pp. 42-48). Plaintiff concedes in her Objection that she seeks "monetary damages" on these causes of action. (Plt. Obj., p. 13). Thus, as a matter of law, Plaintiff is not entitled to the relief sought on any of these causes of action because it is not "other appropriate equitable relief" as required under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). Accordingly, Magistrate Judge Pitman's Report on this point should be adopted by this Court.

## POINT III

### THE REPORT CORRECTLY RECOMMENDS THAT SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFF'S FOURTH CAUSE OF ACTION FOR ATTORNEY'S FEES

Plaintiff's Fourth Cause of Action against MetLife and Second Cause of Action against UAL alleges a claim for attorney's fees under ERISA 502(g)(1), 29 U.S.C. §1132(g)(1). In *Hardt* v.

*Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010), the U.S. Supreme Court recently ruled that a party seeking legal fees in an ERISA action must have "achieved 'some degree of success on the merits'" in order to be eligible for an attorneys' fee award.  *Id.* Since Plaintiff has not achieved any success on the merits, the Report correctly concludes that her claim for attorney's fees should be dismissed.  (Rep., p. 51).

    Plaintiff's argument that she is entitled attorney's fees because she "was forced to litigate to protect her rights as the legitimate and rightful beneficiary" is not a proper objection.  (Plt. Obj., p. 13).  These allegations have no bearing on whether she is entitled to attorney's fees. Plaintiff is required to demonstrate some success on the merits to justify an award of fees.  *Hardt, supra.* Thus, this Court should adopt the Report's recommendation and grant summary judgment dismissing Plaintiff's Fourth Cause of Action against MetLife and Second Cause of Action against MetLife for attorney's fees.

## <u>CONCLUSION</u>

    For the foregoing reasons, this Court should grant summary judgment to MetLife and UAL and dismiss Plaintiff's Amended Complaint.

Dated:  New York, New York
        April 4, 2011

                                    Respectfully Submitted,


                                    s/_____
                                    Michael H. Bernstein (MB-0579)
                                    John T. Seybert (JS-5014)
                                    SEDGWICK LLP
                                    *Attorneys for Defendants*
                                    METROPOLITAN LIFE INSURANCE COMPANY
                                    UNITED AIR LINES, INC.
                                    125 Broad Street, 39th Floor
                                    New York, New York 10004-2400
                                    Telephone: (212) 422-0202
                                    [SDMA File No. 0584-007580]

## CERTIFICATE OF SERVICE

I, JOHN T. SEYBERT, hereby certify and affirm that a true and correct copy of the attached

**METROPOLITAN LIFE INSURANCE COMPANY AND UNITED AIR LINES, INC.'S**

**MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** was served via ECF on

this 4th day of April, 2011, upon the following:

> Benjy M. Corpuz, Esq.
> 40-35 Hampton Street
> Elmhurst, New York 11373

s/_____
JOHN T. SEYBERT

Dated:      New York, New York
            April 4, 2011