UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SONIA I. WAGNER, Surviving Spouse,
herein represented by CORPUZ AND
ASSOCIATES, P.C., as her Attorney-in-Fact,

                      Plaintiff,

-against-

METROPOLITAN LIFE INSURANCE COMPANY,
UNITED AIR LINES, INC.,
EDWARD WAGNER AND
ELIZABETH WAGNER,

                      Defendants.
-------------------------------------------------------------------X

Civil Action No.:08-CV-11284(GBD)

**REPLY AFFIRMATION TO DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED WRITTEN OBJECTION TO MAGISTRATE PITMAN'S REPORT AND RECOMMENDATION**

      **BENJY M. CORPUZ, ESQ.,** hereby affirms the following under penalties of perjury:

      1. I am an attorney duly admitted to practice law before the State of New York and the United States District Courts, for the Eastern and Southern District s of New York.

      2. I am associated with the law firm of CORPUZ AND ASSOCIATES, P.C., attorneys for Plaintiff, Sonia I. Wagner ("Mrs. Wagner") and, as such, am fully familiar with the facts and circumstances set forth herein.

      3. I submit this Reply Affirmation to Defendants' Memorandum of Law in Response to Plaintiff's Amended Written Objection to Magistrate Judge Pitman's Report and Recommendation and in further Support of Plaintiff's Amended Written Objection to Magistrate Pitman's Report and Recommendation.

      4. As clearly stated in pages 51 and 52 of the Report and Recommendation, "(P)ursuant to 28 U.S.C. § 636 (b) (1) (c) and Rule 72 (b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. . . . . Such objections (and responses thereto) shall be filed with the Clerk of the Court. . . . . . Any request for an extension of time

for filing objections must be directed to Judge Daniels. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW." The Magistrate Judge's Report and Recommendation was filed on February 28, 2011 and received by the Plaintiff on March 2, 2011. Plaintiff electronically filed her Amended Written Objection on March 14, 2011. Defendants, therefore, had only until March 28, 2011 within which to file their response to Plaintiff's objections. Defendants filed their Memorandum of Law in Response to Plaintiff's Objections on April 4, 2011. While the Defendants requested for an extension of time within which to file their Response, Judge Daniels never acted on their request. Accordingly, Defendants' Memorandum of Law in Response was filed out of time, and therefore, should not be considered by this Honorable Court as the Defendants effectively waived their right to respond to Plaintiff's written objection.

But, even on the merits, Defendants' response was clearly misleading, misstatement, illogical, misplaced and without merit.

### **INTRUCTIONS FOR FILING A CLAIM**

5. At the outset, it is not too much to emphasize the fact that Plaintiff has always requested and maintained the position that she is entitled to a *de novo* review. But, even under the arbitrary and capricious standard of review, Defendant MetLife failed. Under this rule, conduct is arbitrary and capricious if it is carried out in bad faith, not supported by substantial evidence or erroneous as a matter of law. Please see Nevill v. Shell Oil Co., 835 F. 2d 209 (9th Cir. 1987); Mc Daniel v. Nat'l Shopmen Pension Fund, 817 F.2d 1370; Johnson v. ,District 2 Marine Engineers.

6. In the Memorandum of Law in Response to Plaintiff's Written Objection, MetLife and UAL attempt unsuccessfully to show that, allegedly, "Plaintiff contends that MetLife was required to follow the procedure set forth in Plan, which Plaintiff misconstrues as requiring the employer (i.e. UAL), to complete a form and sent it to the beneficiary for completion (Plt. Obj., p.2) (Defendants' Memo of

2

Law, page 11). This is a deliberate misstatement. In page 2 of the Amended Plaintiff's Written Objection, Plaintiff clearly stated that:

> "Life Claim form(s) must be submitted in accordance with the **instructions** on the MetLife claim form." (Ex. A-2 to Espinosa Decl., at WAGNER 000042, 000085).
>
> This above paragraph/sentence is important as it deals with the instruction for submitting claim forms as distinguished from instructions for filling up the claim form. Likewise, the paragraph/sentence is crucial as it is the basis of the Magistrate Judge's succeeding findings (in page 6 of the Report and Recommendation) that: "MetLife's Insurance Claim Form included an Employer's Statement (Ex. C-2 to Espinosa Decl., at WAGNER 0002210222). **On an attached instruction form, MetLife directed the employer to detach the instructions, complete the Employer's Statement and give the claimant the remaining pages to complete the Claimant's Statement (Ex. C-2 to Espinosa Decl., at WAGNER 000220.** The employer was to submit the Employer's Statement to MetLife with 'all other pertinent claim information (such as enrollment forms and beneficiary designations)' (Ex. C-2 to Espinosa Decl., at WAGNER 000220)." (Emphasis supplied).

Clearly, in this case MetLife failed to follow the Plan's claim procedure (that life claim forms must be submitted in accordance with the instructions on the MetLife claim form) and MetLife's Employer Instructions for Filing Group Life Insurance Claims (that MetLife directed the employer to detach the instructions, complete the Employer's Statement and give the claimant the remaining pages to complete the claimant's Statement).

7. Surprisingly, however, after the Defendants correctly quoted all the provisions relating to the filing of claims in the SPD and the Certificate of Insurance, Defendant MetLife and UAL now claim that "(T)hese governing plan documents establish that the claim process is initiated by the claimant who must call the UBSC, which in turn provides all claim information to MetLife. At that point, MetLife will send out claim forms to the beneficiaries." (Defendants' Memo of Law, page 12).

Defendants' claim is incorrect as it is misleading. On the contrary, and as pointed out in Magistrate Judge Pitman's Report, "(T)he Plan's Summary Plan Description required that any claim for

3

loss of life must be filed by contacting the United Benefit Service Center (UBSC) at 1-888-825-0188. The UBSC will provide MetLife with the necessary information to initiate the claim process.'" (in page 32 of the Report and Recommendation). Clearly, it is MetLife, not the claimant/s, that initiates the claim process after having received from UBSC the necessary information. And, there is nothing, whatsoever, in the Plan's claim procedure/s, which were carefully and accurately quoted by the Defendants, that directs MetLife to "send out the claim forms to the beneficiaries."

      8. And, Defendants make capital of the fact that the "Employer Instructions for Filing Group Life Insurance Claims" submitted by the Plaintiff and included in the administrative claim file has the letters "SBC" on it, followed by "Life Claims". Defendants now conclude that: "(w)hile it is unknown where the Plaintiff obtained the form, it is clearly not the form for the UAL Plan" and that the "instructions on that form have nothing to do with the claims procedure established by the UAL Plan." Defendants' conclusion, while at first glance seems logical, is actually illogical and misplaced as it is without merit. As previously manifested (please see par. 38 of Reply Affirmation, page 9, Document 65), the form was researched by the Plaintiff. Just type the words "Employer's Instructions for filing Group Life Insurance Claims" and "MetLife" in the internet and you get the exact instructions (Employer Instructions for Filing Group Life Insurance Claim) and the same forms (Employer's Statement and Claimant's Statement) found in the administrative claim file in MetLife's possession. Note further, that aside from the letters "SBC" instead of "Group," the forms (Employer's Statement and Claimant's Statement) are exactly the same including the address of MetLife's Office in Utica, New York 13504. Clearly, the instruction form is a general MetLife Insurance form applicable to all group life claims, as even the actual Employer's Statement and the Claimant's Statement in this case does not have the letters "UAL Life Claims" but only the general "Group Life Claims" in the forms.

      9. But the most important question has not yet been answered by the Defendants. The Plan directs that "Life Claim form(s) must be submitted in accordance with the instructions on the MetLife claim forms." Now, where and what are the instructions? Are/is there an instruction/s and forms

applicable only to UAL Life Claims? Are the Defendants concealing something from the Plaintiff and to this Court? Clearly, the Defendants, aside from merely disputing the applicability of the instruction form, has not presented a contrary instruction form, even a general one, or if not, one that is specifically applicable <u>only</u> to UAL Group Life Claims. This is clearly because there is no such instruction form and claim forms applicable only to UAL Life Claims, as this is not only illogical but serves no special purpose other than identification. Instead, there is a general instruction form and that this general instruction form (for filing group life claims) actually applies to all group life insurance claim administered by Defendant MetLife, including those claims coming Defendant UAL's employees.

**<u>DISBURSEMENT OF DECEDENT'S BENEFITS</u>**

10. Incredibly, for the first time, the Defendants claim that "the Non-Retiree Death Notification form completed by United was faxed to Defendant MetLife on December 12, 2005" without providing us with any specifics as to who faxed the form, and to whom was it addressed to, the fax numbers used, from and to, so we can trace it. The form only has the following notation (at the top most portion): "RightFax    12/12/05      8:07     PAGE 002/002    Fax Server"  But, then again,  the faxed document shows that it is page 2 of  two pages. So, where is page 1? . . .  and what is page 1 all about?  Is the administrative file, kept by Defendant MetLife, incomplete? Or, is the file complete but when reproduced for this case was already incomplete?

11. Next, the Defendants assert that Plaintiff's argument that MetLife could and/or should have asked for more documents, . . . . . could/and should have asked questions . . . . . or MetLife could and/or should have communicated with the employer . . .  "is premised on a misassumption that MetLife actually knew of Plaintiff and her claim at the time it paid the benefits, which is incorrect. Therefore, MetLife had no reason to search for additional information."

Defendants' argument is clearly misplaced and a disgrace to the insurance industry working tirelessly to adopt measures and strategies and safeguards to prevent insurance fraud. Defendants'

5

argument is premised on a misassumption that MetLife will only verify and ask for more documents, ask questions and/or communicate with the employer ONLY if they actually knew of Plaintiff and her claim. Irregardless of whether or not Defendants knew of the Plaintiff or her claim, it is Defendants' fiduciary duty and responsibility to verify, request for more information and make reasonable inquiry and investigation as to the truth and veracity of the information it received from claimants.

12. Indeed, while in most insurance companies, verification of a claim is a standard operating procedure or "SOP", for Defendant MetLife it apparently is not. Or, it is not "SOP" but only in this case as, based on the administrative file kept by Defendant MetLife, Defendant MetLife sent out the following numbers of verification request – **ZERO**.  Records will show that no verification request, whatsoever (either to request for more documents or ask additional questions to verify allegations and answers in the Claimant's Statement and Affidavit or to request for confirmation of documents which were suppose to be provided by the Employer but did not, etc. ), were issued in this case.

13. But then again, as to the Defendants, "the divorce decree would have provided no additional information."  This is not correct. On the contrary as with the divorce decree, MetLife could have immediately verified that the date of Decedent's divorce was not 11-27-02 as indicated in the Claimant's Affidavit but is actually 11-30-01.

14. And, again, as to the Defendants, there is no need to ask questions such as "if Decedent 'remarried' since the claimants already stated in their affidavit and statements that the Decedent was only married "once".  But this is precisely the reason why the Defendant MetLife should have asked the question – which is to verify the accuracy of their answers in the Claimant's Statement/Affidavit.

15. Next, Defendants claim that "Plaintiff argues that UAL should have been the sole entity dealing directly with the beneficiaries because 'it is the employer UAL, more than any other entity, which would or should know potential beneficiaries of a deceased employee.'"  And Defendants went on to assert that " . . .  the Plan documents unambiguously state that '[a]fter MetLife received your claim for Benefits, MetLife will review your claim and notify you of its decision to approve, request additional

6

information or deny your claim'. Defendants now conclude that "MetLife was the properly designated claims administrator for the Plan Benefits and had the sole authority to determine the proper beneficiaries for Decedent's Plan Benefits."

Defendants' claim, assertion and conclusion are misleading and misplaced. First, Plaintiff never claimed that UAL should have been the sole entity dealing directly with the beneficiaries. On the contrary, it is Defendant MetLife, in its "Employer Instructions for Filing Group Life Insurance Claims," that directs the employer to "(d)etach this page and complete the Employer's Statement on the following page" and "(g)ive the beneficiary the remaining pages of this claim folder so that he or she may complete the Claimant's Statement." Second, it is only upon receipt of the claim (which is, of course, upon compliance with the aforestated instructions to the employer) that MetLife will review the claim and notify the claimant of its decision to approve, request for more information or deny the claim. And, thirdly, while this is not an obligation that UAL assumed when it designated the Plan, MetLife required, in its Employer Instructions, UAL to assist MetLife by giving the beneficiary the pertinent forms so that the beneficiary can complete the Claimant's Statement. Clearly, UAL, in assisting MetLife by the mere giving of Claimant's Statement to the beneficiary, is not assuming unto itself MetLife's sole authority to determine the proper beneficiaries for Decedent's Plan Benefits.

16. And, for the first time, Defendants now claim that Donna L. Wheat, who is admittedly the Customer Service Representative of MetLife Record Keeping Center at Utica , NY 13504-6169 who sent out the Death Benefit packet to the Wagner's children and who is admittedly is the same person who signed the Employer's Statement, is not a MetLife employee but UAL's authorized representative.

With the foregoing, clearly, Defendants MetLife and UAL not only violated the Plan and its own instructions but actually blatantly disregarded all the safeguards the Plan and the instructions' very purpose and reason for being established and/or created in the Plan. There are reasons why the form was called "Employer's Statement"; there are reasons why the form requires the employer to attach any enrollment forms and beneficiary designations it retained or might have retained; there are reasons why

7

the form requires that if the employer has any questions, for the employer to please contact the MetLife administrator responsible for the employer's group.  But if, as in this case, the Employer Statement was prepared and signed by a MetLife Customer Service Representative who is also based in Utica, New York, then Defendant MetLife is actually doing the functions of both the Employer and the Claims Administrator. And, Defendant UAL, who is, admittedly, also the Plan Administrator (Please see Answer to Amended Complaint,  twenty-third, page 5) allowed this violation and blatant disregard of the Plan and Defendant MetLife's instructions to the employer, to the loss and prejudice of the Plaintiff.

17. Indeed, Defendant UAL is also a fiduciary under the Plan and is liable, in the alternative, for the payment of life  insurance benefits.  Any fiduciary who delegates any of its fiduciary responsibility to another fiduciary still has the continuing duty and responsibility to monitor the fiduciary delegates' conduct and, where appropriate, terminate the delegation of responsibility. Please see Henry v. Frontier Indus., Inc., Nos. 87-3879 and 87-3898, 1988 WL 132577 (9th Cir. 1988); Leigh v. Engle, 727 F.2d. 113, 135 (7th Cir. 1984); Arakelian v. National W. Life Ins. Co.,755 F. Supp. 1080, 1084 (D.D.C. 1990);  Cf. Martin v. Feileer, 965 F. 2d 660. 669-70 (8th Cir. 1992).

**CONCLUSION**

18. Indubitably, Defendants MetLife and UAL, in this case, made the loss possible by allowing the fraudulent claim of the decedent's children to pass and prosper to the prejudice and loss of the Plaintiff.

Plaintiff, Mrs. Wagner, now most respectfully requests that this Honorable Court reject the Report and Recommendation of the Magistrate Judge, grant her motion for summary judgment, deny Defendants' motion for summary judgment, together with such and further remedies as this Court deem just and proper under the premises.

Dated: April 11, 2011
Elmhurst, New York

                                      _____/S/_____
                                      **BENJY  M. CORPUZ (BC-2223)**
                                      CORPUZ AND ASSOCIATES, P.C.
                                      Counsel for Plaintiff SONIA I. WAGNER
                                      40-35 Hampton St., Unit 2F
                                       Elmhurst, New York 11373
                                       (646) 431-5140/(212-695-5281/82
                                       Fax No. (212) 563-2664
                                       E-mail Address: attybmc@yahoo.com
                                       Bar I.D. No. BC-2223

\

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the attached Plaintiff's: **REPLY AFFIRMATION TO DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED WRITTEN OBJECTION TO MAGISTRATE PITMAN'S REPORT AND RECOMMENDATION** was served via regular Electronic Case Filing (ECF) on April 11, 2011, upon:

        MICHAEL H. BERNSTEIN, ESQ.
        JOHN T. SEYBERT, ESQ.
        SEDGWICK, DETERT, MORAN & ARNOLD, LLP
        Attorneys for Defendant
        METROPOLITAN LIFE INSURTANCE COMPANY
        AND UNITED AIR LINES, INC.
        125 Broad Street, 39th Floor
        New York, New York 10004
        Tel. No. (212) 244-0202
        Fax No. (212) 422-0925
        [SDMA File #0584-007580]


Dated:  April 11, 2011
       Queens, New York


                                      _____/S/_____
                                      BENJY M. CORPUZ (BC2223)